Gary L. ADAMS et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 79–1008
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 9, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Louis K. Rosenbloum, Pensacola, Fla., for plaintiffs-appellants.

Thomas G. Banjanin, Asst. U.S. Atty., Pensacola, Fla., for defendant-appellee.

Before CHARLES CLARK, VANCE and SAM D. JOHNSON, Circuit Judges.

VANCE, Circuit Judge:

The Adams appeal the dismissal of their tort action brought under 28 U.S.C. §§ 1346(b), 2401(b), 2671–80 against the United States. The district court dismissed their suit because, in presenting their administrative claim, the Adams had not fully complied with the regulations governing the elements of a proper claim, 28 C.F.R. §§ 14.1–14.11, and, hence, had failed to satisfy the statutory prerequisite under 28 U.S.C. § 2675 to institution of a suit against the United States. We reverse and remand.

I.

Jason Lee Adams was born at Eglin Air Force Base on July 25, 1976. Within 24 hours of his birth, the Air Force arranged for the child to be sent to Sacred Heart Hospital in Pensacola, Florida, for special treatment and evaluation. The Air Force then had him returned for care to Eglin.

The test results disclosed that the child had cerebral palsy secondary to hypoxic encephalopathy with spastic quadriplegia and microcephaly. The evaluation indicated that the child's condition was caused by brain damage resulting from a lack of oxygen to the brain, and that the child's prognosis was very poor. It is unlikely that his condition will ever improve or that he will have a very meaningful life. Jason will always require total care.

Gary L. Adams and Deborah A. Adams filed a claim with the Air Force against the United States on behalf of themselves and their son Jason pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–80. They alleged that the Air Force physicians who delivered Jason and provided Mrs. Adams with prenatal care negligently caused Jason to suffer permanent brain damage. In accordance with 28 C.F.R. § 14.2 the Adams submitted their claim on a completed standard Form 95 to an Air Force claims officer at Eglin Air Force Base, Florida. Their claim, which alleged improper medical care by the Air Force, was filed on March 23, 1978, by their attorney, and was not answered within the six-month administrative review period.

The claims officer responded on March 31, requesting, under authority of 28 C.F.R. § 14.4(b), written reports by any attending physicians who were not government employees, itemized bills and expenses, a statement of future expenses and a signed medical authorization. The Adams' attorney wrote the claims officer on April 12, stating, "In my opinion, you have at your disposal all the necessary records to properly evaluate this claim." He added,

> We will fully develop this claim with respect to the private physicians and the

necessary future expenses, and when you have had an opportunity to fully investigate everything at your disposal, we will be more than happy to exchange information in full.

In an April 18 letter, the claims officer stated that the requested information was "necessary to evaluate this claim and [was] required by this agency." He added that Jason had been transferred to Sacred Heart without a diagnosis; the Air Force physicians had been unable to determine the cause of the child's problems. The claims officer also stated,

I assume that from your conversations with me you do not evaluate cases without having all the facts and also would not expect us to evaluate this case without having all the facts. In addition, your failure to cooperate and supply us with the necessary information could result in a denial of your claim on that basis and prejudice your rights to proceed in federal court.

On June 12, appellants replied, "I hope you understand that we are in no way refusing to cooperate with your office and will furnish to you all of the items requested in your earlier letters as soon as we have received them ourselves." The Adams' executed medical authorizations were forwarded to the claims officer on July 5.

The claims officer wrote on July 19, asking that x-rays picked up by Mrs. Adams be returned as soon as possible "in order for me to complete the investigation of this claim." Responding on July 24, the Adams offered to return the x-rays, if the Air Force would promise to return them within ten days after receipt. On July 26, the claims officer insisted on the return of the x-rays, emphasizing that they were crucial to the evaluation of the claim and that without them the claim's merits could not be determined. They were returned on August 15.

In an affidavit dated November 14, the Adams' attorney stated that prior to filing the administrative claim, he had discussed Jason's condition with Air Force pediatrician Dr. Harlan W. Sindell. He stated further that he was told that Dr. Sindell had the "benefit of the medical information" obtained by Sacred Heart. Dr. Sindell's affidavit denies this fact. The claims officer's affidavit states that he never received this information or damage information. In short, there is a factual controversy as to what information was available to Air Force physicians. The Adams' attorney contends that he read the claims officer's letters as narrowing his requests, whereas the claims officer contends that his requests were cumulative.

After more than six months had passed without the settlement of their claim, the Adams brought this action in federal district court. They alleged that Jason's severe and permanent disabilities resulted from the negligent prenatal and delivery care provided by Air Force physicians. The district court found that the Adams had failed to make a proper claim with the Air Force. The court held that, even if the Air Force had the information needed to process their claim, the Adams were obligated both to state that they had not incurred any medical expenses of which the Air Force was not informed and to provide the Air Force with information regarding necessary future medical expenses. On this basis, their action was dismissed. The court did not reach the statute of limitations issue raised by the United States.

## II.

Title 28 U.S.C. § 2675(a) establishes that as a prerequisite to maintaining a suit against the United States under 28 U.S.C. § 1346(b) a plaintiff must present notice of his or her claim to the appropriate federal agency. *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978). Only after the claim has been denied or six months have passed may a plaintiff bring suit in federal court on the claim. 28 U.S.C. § 2675(a).

Under 28 U.S.C. § 2672, administrative agencies may settle claims presented to them. The Department of Justice promulgated 28 C.F.R. §§ 14.1–14.11 pursuant to section 2672. These regulations describe the settlement procedures to be followed by agencies and claimants.

The parties to this appeal dispute whether the Adams gave the Air Force sufficient notice to enable them to maintain this action. The United States argues that the Adams failed to provide the Air Force Claims Officer with all of the information that he requested as necessary to evaluate their claim. Specifically, the Adams failed to comply with the 28 C.F.R. § 14.4(b) [1] requirement that claimants provide the Air Force with written reports by nongovernmental attending physicians, with itemized bills and expenses, and with a statement of expected future medical expenses. The United States asserts, therefore, that because, in presenting their administrative claim, the Adams did not comply with the regulations governing the elements of a proper claim, 28 C.F.R. §§ 14.1–14.11, the district court properly dismissed their action.[2] The Adams contend that their failure to submit this information resulted from a mutual misunderstanding, which does not warrant dismissal of their suit, and that, in any event, the Air Force did not need the information to evaluate their claim because it already possessed the information.

The Air Force, therefore, basically argues that the Adams' failure to comply with 28 C.F.R. § 14.4(b) denies them the jurisdiction of a federal court. It is apparently of no consequence that the Air Force already possessed, or had ready access to, most of the information demanded, such as pertinent medical records and itemized bills or expenses. All relevant medical records were prepared either by the Air Force's own physicians or by the physicians at Sacred Heart Hospital, where the Air Force's doctors arranged for various tests to be run on Jason Adams. Likewise, the Air Force, which covered all expenses for the child's care, had access to itemized bills and expenses. The record does not indicate that the Adams' past medical expenses included any expense not covered by these bills. According to the Air Force, the inefficiency and inequity of demanding that a claimant produce information already in the Air Force's

---

1. Section 14.4(b) provides,

(b) *Personal injury.* In support of a claim for personal injury, including pain and suffering, the claimant may be required to submit the following evidence or information:

(1) A written report by his attending physician or dentist setting forth the nature and extent of the injury, nature and extent of treatment, any degree of temporary or permanent disability, the prognosis, period of hospitalization, and any diminished earning capacity. In addition, the claimant may be required to submit to a physical or mental examination by a physician employed by the agency or another Federal agency. A copy of the report of the examining physician shall be made available to the claimant upon the claimant's written request provided that he has, upon request, furnished the report referred to in the first sentence of this paragraph and has made or agrees to make available to the agency any other physician's reports previously or thereafter made of the physical or mental condition which is the subject matter of his claim.

(2) Itemized bills for medical, dental, and hospital expenses incurred, or itemized receipts of payment for such expenses.

(3) If the prognosis reveals the necessity for future treatment, a statement of expected expenses for such treatment.

(4) If a claim is made for loss of time from employment, a written statement from his employer showing actual time lost from employment, whether he is a full or part-time employee, and wages or salary actually lost.

(5) If a claim is made for loss of income and the claimant is self-employed, documentary evidence showing the amounts of earnings actually lost.

(6) Any other evidence or information which may have a bearing on either the responsibility of the United States for the personal injury or the damages claimed.

Section 14.2(a) provides,

(a) For purposes of the provisions of section 2672 of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. If a claim is presented to the wrong Federal agency, that agency shall transfer it forthwith to the appropriate agency.

2. The Air Force has promulgated its own additional regulations regarding administrative claims. 32 C.F.R. §§ 842.0–842.181. The Air Force does not contend that the Adams failed to comply with these regulations.

possession are immaterial. Section 14.2, it assumes, draws a line between an agency's claims officer and its personnel who allegedly negligently caused a particular injury. It is also apparently of no consequence that the remaining information sought by the Air Force was inherently speculative. Even when, as here, future medical expenses are exceedingly difficult to ascertain, the Air Force believes that it may condition federal court jurisdiction on the ability of claimants in a medical malpractice case to provide a definite statement of expected future medical expenses. In other words claimants may be required to prepare the government's case or to prove their cases to a government claims officer before trial.

### III.

The argument of the Air Force fails for two reasons. First, it erroneously assumes that the notice requirements of 28 U.S.C. § 2675 must be read in light of the settlement procedures established by 28 C.F.R. §§ 14.1–14.11, which were promulgated pursuant to section 2672. Such a reading clearly contravenes congressional intent. The question whether a plaintiff has presented the requisite section 2675 notice is determined without reference to whether that plaintiff has complied with all settlement related requests for information. Second, even assuming that the Air Force correctly contends that section 2675 must be construed in light of section 2672 and 28 C.F.R. §§ 14.1–14.11, the Adams would not be barred from bringing their claim in federal court. To the extent that those regulations attempt to define section 2675 notice, they do so in section 14.2. The parties agree, however, that section 14.2 has been satisfied; the Adams have merely failed to comply with section 14.4(b). On either basis, therefore, the Air Force's position must be rejected.[3]

### IV.

Congress' intent in enacting section 2675 is frustrated when the distinct functions of presenting notice and of engaging in settlement are confused in a way that impermissibly redefines the section 2675 notice requirement. The Air Force's argument confuses these two functions.

■ The relevant legislative history indicates two congressional purposes in requiring claimants to provide the relevant agency with notice of their claims. First, in enacting the notice requirement, Congress sought "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.Rep.No.1327, 89th Cong., 2d Sess. 6 [hereinafter cited as S.Rep.], reprinted in [1966] U.S.Code Cong. & Admin.News, pp. 2515, 2516. This efficiency purpose, however, accompanies a second purpose "of providing for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." S.Rep. at 5, reprinted in [1966] U.S.Code Cong. & Admin. News at pp. 2515–16.

The section 2675 requirement of filing a claim before instituting suit sought to bring the claimants' allegations to the immediate attention of the relevant agency. S.Rep. at 8, reprinted in [1966] U.S.Code Cong. & Admin.News at 2518. Congress altered the status quo, therefore, because it considered the prior practice, under which a claimant first filed suit, then the United States Attorney referred his or her complaint to the agency, wasteful, time consuming and inequitable. That process artificially crowded the dockets of district courts[4] with claims that would be settled once the United

---

**3.** Our decision only addresses the question whether an administrative claim has been presented in compliance with section 2675, even though the claimant has not fully complied with the regulation passed pursuant to section 2672. The propriety of dismissing an action instituted in federal district court when the plaintiff has not first presented any notice to the relevant agency as required by section 2675, however, is well settled in this circuit. See note 15 infra.

**4.** "Another objective of this bill is to reduce unnecessary congestion in the courts." S.Rep.

States Attorney conferred with the relevant agency.[5] The situation thus unnecessarily consumed the time of United States Attorneys [6] and subjected deserving plaintiffs to needless delays and attorneys' fees in processing their claims through the federal courts. S.Rep. at 5–6, *reprinted in* [1966] U.S.Code Cong. & Admin.News at pp. 2515–16.

Congress thought it preferable that claimants go first to the relevant agency. If the agency found settlement to be appropriate and if the case were settled at that point, considerable benefit would accrue to all parties concerned.[7] If no settlement obtained, the claimant could still proceed with his or her claim in federal court.

> Final denial [of a presented claim] . . includes instances where partial approval of a claim results in an offer unacceptable to the claimant and rejected by him. . . . However if the agency fails to act in 6 months, the claimant may at his option elect to regard this inaction as a final denial and proceed to file suit. It is obvious that there will be some difficult tort claims that cannot be processed and evaluated in this 6-month period.

S.Rep. at 8, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2518.[8]

The two congressional purposes are adequately served if the prerequisite administrative claim is only the giving of "notice of an accident within a fixed time." S.Rep. at 7, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2517. Congress intended the section 2675 requirement of presenting notice to be construed in light of the notice traditionally given to a municipality by a plaintiff who was allegedly injured by a municipality's negligence. *Id.* Congress deemed this minimal notice sufficient to inform the relevant agency of the existence of a claim.

> The purpose of this notice [is] . . . .—
> * * * to protect the [government] from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit.

*Id.* (quoting 18 E. McQuillin, *The Law of Municipal Corporations* § 53.153, at 545 (3d ed. 1977)). This requisite minimal notice, therefore, promptly informs the relevant agency of the circumstances of the accident so that it may investigate the claim and respond either by settlement or by defense. In addition, as section 2675(b) shows, this notice was to include a statement of damages.

■ An individual with a claim against the United States, therefore, satisfies section 2675's requirement that "the claimant shall have first presented the claim to the appropriate Federal agency" if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim. S.Rep. at 7, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2517. *See generally* 18 E. McQuillin, *The Law of Municipal Corporations* § 52.153 (3d ed. 1977); Annot. 62 A.L.R.2d 340, 341–51 (1958). This information alone allows the claimant to maintain a subsequent action in

---

at 8, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2518.

5. "[I]n private practice where prelitigation settlements are allowed, only 40 percent of claimants for personal injuries file suit and of these cases, less than 10 percent reach trial and only 3 percent go to verdict." S.Rep. at 6, *reprinted in* U.S.Code Cong. & Admin.News at p. 2517.

6. Agency settlement of substantial numbers of tort claims would enable the Civil Division to give greater attention to those cases which involve difficult legal and damage questions in such areas as medical malpractice, drug and other products liability, and aviation accidents. These areas of litigation are expanding at a steady pace.

S.Rep. at 9, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2520.

7. "The filing of the suit and the consequent expense to the Government in preparing the case would appear to be unnecessarily involved when the case is a proper one for early settlement." S.Rep. at 8, *reprinted in* [1966] U.S. Code Cong. & Admin.News at p. 2518.

8. In effect, therefore, Congress sought only to eliminate the middlemen, the courts and the U.S. attorneys. "The purpose of the [mandatory administrative claims procedure] was not to make recovery from the Government technically more difficult." *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515 (6th Cir. 1974).

the district court following the denial of his or her claim by the agency or the passage of six months. Noncompliance with section 2675 deprives a claimant of federal court jurisdiction over his or her claim.[9]

## V.

Section 2672 governs agency conduct, including administrative settlement and adjustment of properly presented claims, once notice has been given pursuant to section 2675. See S.Rep. at 8, reprinted in [1966] U.S.Code Cong. & Admin.News at 2518. It facilitates settlement by authorizing the Department of Justice to promulgate regulations defining the settlement process for administrative claims and authorizing federal agencies to promulgate additional regulations and to "consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States." 28 U.S.C. § 2672. Thus, section 2672 creates a structure within which negotiations may occur. Noncompliance with section 2672 deprives a claimant only of the opportunity to settle his or her claim outside the courts.

The requirements of section 2675 and of section 2672 are, therefore, independent. Presentation of a claim and its settlement are distinct processes: "[section 2672] authorize[s] the head of each Federal agency to settle or compromise any tort claim presented to him [under section 2675]." S.Rep. at 8, reprinted in [1966] U.S.Code Cong. & Admin.News at p. 2518.[10]

A claimant will ordinarily comply with 28 C.F.R. §§ 14.1–14.11 if he or she wishes to settle his or her claim with the appropriate agency. These requirements go far beyond the notice requirement of section 2675. Equating these two very different sets of requirements leads to the erroneous conclusion that claimants must settle with the relevant federal agency, if the agency so desires, and must provide that agency with any and all information requested in order to preserve their right to sue. This conclusion is not supported by relevant legislative history.[11]

Congress explicitly recognized that, unlike routine cases, medical malpractice cases

9. In promulgating section 2675, Congress, therefore, did not seek to allow federal agencies unilaterally to shift the burden of investigation to private claimants while retaining only the responsibility of evaluating the information supplied by the claimant:

> This procedure [of filing claims with the appropriate federal agency] would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. That agency would have the best information concerning the activity which gave rise to the claim.

S.Rep. at 7, reprinted in [1966] U.S.Code Cong. & Admin.News at p. 2517 (emphasis added).

This intent is also clearly discernible in congressional statements assessing the legislation's likely impact on the workload of agencies:

> The bill will not assign novel tasks to the agencies. They now investigate all accidents involving their employees, prepare litigation reports on all tort cases, suggest Government defenses to claims, and, at the request of the Department of Justice, comment on all settlement offers presented to the Department. The views of the affected agency have always been taken into account by the Department in accepting or rejecting an offer of settlement.

S.Rep. at 8, reprinted in [1966] U.S.Code Cong. & Admin.News at p. 2519 (emphasis added).

The Attorney General's comments in a March 10, 1966, letter to the Speaker of the House of Representatives are similar:

> These proposals are designed to improve the disposition of monetary claims by and against the Government—claims which now comprise the bulk of civil litigation involving the Government. The proposals should ease court congestion, avoid unnecessary litigation, speed up settlements, and reduce the number of stale claims. Such results would, of course, not only benefit private litigants but be beneficial to the courts, the agencies, and the Department of Justice.

S.Rep. at 10, reprinted in [1966] U.S.Code Cong. & Admin.News at p. 2524.

10. The portion of 28 C.F.R. § 14.2 that provides that "a claim shall be deemed to have been presented" does not, as the regulation clearly indicates, refer to presenting a claim for jurisdictional purposes pursuant to section 2675. See note 1 supra. The regulation only applies to the presentation of a claim to the relevant agency for purposes of settlement.

11. Neither claimants nor agencies are compelled to settle claims. If, however, an agency and a claimant deem settlement appropriate, section 2672 makes settlement possible. Indeed, one of the reasons for which Congress

"involve difficult legal and damage questions," S.Rep. at 9, *reprinted in* [1966] U.S. Code Cong. & Admin.News at p. 2520, questions that are not always amenable to settlement, S.Rep. at 8, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2518. Agencies were not intended to bar cases involving difficult issues from federal court by turning their difficulty against the claimants. *See Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515–16 (6th Cir. 1974); S.Rep. at 9, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2520. Section 2675 was meant to expedite the fair handling of ordinary tort cases in order to free the agencies to concentrate on more difficult cases.[12]

■ A claimant's refusal to settle his or her claim will not deprive the federal court of jurisdiction, if the claimant has provided the statutorily required notice. Although many claimants will rationally elect to settle their claims,[13] Congress clearly did not deem settlement mandatory.[14]

## VI.

■ Because Congress' express goals were achieving fairness and efficiency by giving the relevant agency the opportunity to investigate and to settle claims without the expense and delay of litigation, we cannot perceive any legislative authorization for reading the requirements of section 2675 in light of 28 C.F.R. § 14.4.[15] The

included an attorneys' fee provision was, according to the Attorney General, "to *encourage* claimants and their attorneys to make *use of this new administrative procedure.*" S.Rep. at 11, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2524. Encouragement would hardly have been thought necessary if the administrative procedures under section 2672 were mandatory or were, through section 2675, a jurisdictional prerequisite to suit.

12. In *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515–16 (6th Cir. 1974), the court recognized the inappropriateness of requiring claimants to comply with all agency requests for information in cases involving a "large and factually unusual claim." *Id.* at 515.

13. We therefore propose that *a procedure* be instituted under which all claims would be presented to the appropriate agencies *for consideration and possible settlement before court action could be instituted.* A claim would first be considered by the agency whose employee's activity allegedly caused the damage and which possesses the greatest information concerning that activity. As a result, *it is expected* that meritorious claims would be settled more quickly, without the need for expensive and time-consuming litigation or even for filing suit.
S.Rep. at 10, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2524 (comments of the Attorney General) (emphasis added).

14. Assuming that claimants act rationally, Congress realized that a claimant would use settlement procedures if he or she would benefit from doing so:
This committee in recommending this legislation further points out that it grants the agencies of Government sufficient authority to make the administrative settlements a

meaningful thing. The bill would provide the agencies with the authority to make settlement offers which could result in settlement in a large percentage of tort claims cases whereunder today's conditions the present $2,500 limit means that administrative settlements are limited to property damage claims and relatively minor personal injury claims. There is good reason to believe that even in many of these cases a claimant may decide to file suit because of the present limits upon administrative settlement. This is because as soon as the case is filed, the Government can negotiate a settlement without regard to that limitation. It does not appear that this procedure is conducive to efficient claims administration. The filing of the suit and the consequent expense to the Government in preparing the case would appear to be unnecessarily involved when the case is a proper one for early settlement.
S.Rep. at 7–8, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2518.

15. Seldom have circuit courts been presented with the precise question before us. A number of cases, however, have held that 28 C.F.R. § 14.2, passed pursuant to section 2672, defines, in part, the requirements of section 2675 by requiring that notice of a claim include the amount of the claimed damages. *See, e. g., Caton v. United States*, 495 F.2d 635, 637 (9th Cir. 1974); *Avril v. United States*, 461 F.2d 1090, 1091 (9th Cir. 1972); *Ianni v. United States*, 457 F.2d 804 (6th Cir. 1972); *Bialowas v. United States*, 443 F.2d 1047, 1050 (3d Cir. 1971). Although we disagree with the reasoning of these courts to the extent that they have construed section 2675 as requiring claimants to exhaust their administrative remedies under section 2672, we reach the same conclusion

scheme is rational and coherent without such a reading.[16] An agency's demand for anything more than a written and signed statement setting out the manner in which the injury was received, enough details to enable the agency to begin its own investigation and a claim for money damages is unwarranted and unauthorized. This is especially true if, as here, the agency already possesses most of the information it demanded.

■ Having satisfied Congressional standards for presenting a claim under section 2675, the Adams are not barred from litigating their claim in federal court. The district court thus committed reversible error. The Adams notified the agency of their claim and assigned a value to it.[17] This compliance is not erased merely because they did not obey the Air Force's demand that they provide additional information which would have been necessary for the administrative settlement of their claim.

A federal court's power to adjudicate a tort claim brought against the United States depends solely on whether the claimant has previously complied with the minimal requirements of the statute. 28 U.S.C. § 2675. Federal court power does not depend on whether a claimant has successfully navigated his or her way through the gauntlet of the administrative settlement process, which, according to the vagaries of the claims agent, may touch picayune details, imponderable matters, or both.

## VII.

■ If 28 C.F.R. § 14.2 did define the presentation of a claim for section 2675 purposes, our result would not be different. The government does not dispute that the Adams in fact complied with the requirements of 28 C.F.R. § 14.2. The Air Force only contends that the Adams failed to comply wholly with their requests made pursuant to 28 C.F.R. § 14.4. These requests, however, are permissible, not mandatory. Yet, 28 C.F.R. § 14.2 does not suggest that an agency's authority to request 28 C.F.R. § 14.4 information is the authority to rewrite the 28 C.F.R. § 14.2 definition of presenting a claim. *See* note 1 *supra.* The Air Force concedes that

A claim is considered to have been presented when the Air Force receives an executed SF 95 or written notification of an incident, together with a claim for money damage in a sum certain, for property loss or damage, personal injury or death from a claimant, his duly authorized agent, or his legal representative.

because we read section 2675 as requiring by its own terms that a claimant place a dollar amount on his damages. *See Molinar v. United States,* 515 F.2d 246, 248–49 (5th Cir. 1975); *Caton v. United States,* 495 F.2d at 638.

In other cases, courts have also assumed that section 2675 notice incorporates the requirements of 28 C.F.R. §§ 14.1–14.11. *See, e. g., Best Bearings Co. v. United States,* 463 F.2d 1177, 1179 (7th Cir. 1972); *Meeker v. United States,* 435 F.2d 1219, 1221 (8th Cir. 1970); *Peterson v. United States,* 428 F.2d 368, 369 (8th Cir. 1970); *Gunstream v. United States,* 307 F.Supp. 366, 369 (C.D.Cal.1969). We reach the same result as those courts because the cases before them involved claimants who had failed to present any notice to the appropriate administrative agencies. *See Employees Welfare Comm. v. Daws,* 599 F.2d 1375, 1378 (5th Cir. 1979); *Mack v. Alexander,* 575 F.2d 488, 489 (5th Cir. 1978); *Hejl v. United States,* 449 F.2d 124, 126 (5th Cir. 1971); *Johnson v. United States,* 404 F.2d 22, 24 (5th Cir. 1968). *See generally Rosario v. American Export-Isbrandtsen Lines, Inc.,* 531 F.2d 1227, 1234 (3d

Cir.), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).

16. A contrary interpretation is not suggested by 28 U.S.C. § 4116(a). *See also* 28 U.S.C. § 2679(b).

17. The propriety of regulations requiring a claimant to include a statement of money damages does not rest on the relation between section 2672 and section 2675. Section 2675(b) anticipates that the claim will be for a definite amount. Regulations and procedures under section 2672 have an independent basis for requiring a claimant to state his damage claim with specificity. *But see Caton v. United States,* 495 F.2d 635, 637–38 (9th Cir. 1974). Further, claims of different amounts are to be treated differently for purposes of settlement. 28 U.S.C. § 2672. Yet, to satisfy section 2675(b), a claimant may only be required to state his or her damages; he or she may not be compelled to prove them.

 

32 C.F.R. § 842.105(a)(1). Because the Air Force's own regulations enacted pursuant to section 2672 equate a presented claim to a claim in compliance with section 14.2, *see* note 1 *supra*, we must reject their present contention that a claim is not presented unless it complies with both sections 14.2 and 14.4.

REVERSED and REMANDED.