PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
3/02/99
THOMAS K. KAHN
CLERK

----------------------
No. 98-2024
----------------------
D. C. Docket No. 96-1653-CIV-T-26B


BOYD BURCHFIELD,

Plaintiff-Appellant,

versus


UNITED STATES OF AMERICA,
DEPARTMENT OF VETERAN AFFAIRS,

Defendants-Appellees.


------------------------
Appeal from the United States District Court
for the Middle District of Florida
------------------------
**(March 2, 1999)**


Before HATCHETT, Chief Judge, MARCUS, Circuit Judge, and KRAVITCH,
Senior Circuit Judge.

KRAVITCH, Senior Circuit Judge:

A plaintiff who sues under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., must first present his or her claim to the appropriate federal agency. 28 U.S.C. § 2675(a). This case requires us to determine the amount of information that this claim must contain. Appellant Boyd Burchfield ("Burchfield") sued the United States pursuant to the FTCA, alleging that the negligence of employees of the Department of Veterans Affairs ("VA") led to his severe osteoporosis. The district court held that it lacked subject matter jurisdiction over the complaint because the claim that Burchfield had presented to the VA did not satisfy 28 U.S.C. § 2675(a). We conclude that Burchfield's claim contained sufficient information to meet the presentment requirements of section 2675(a), and therefore reverse and remand for further proceedings.

I.

While on active duty with the United States Army in 1968, Burchfield developed a tumor of the pituitary gland. Army doctors operated to remove the tumor, but it reoccurred in 1986 and Burchfield underwent five additional surgeries, the last in 1990. As a result of the surgeries, Burchfield developed panhypopituitarism (non-functioning of the pituitary gland), which caused his body to stop producing cortisone, thyroid hormone, and testosterone. To replace some of these natural hormones his

doctors, VA employees, prescribed a corticosteroid, Prednisone. As far as the record before us shows, Burchfield's doctors did not accompany this prescription with a program of dietary supplements to combat osteoporosis, such as Vitamin D, calcium or calcitonin. The doctors also prescribed injectable testosterone, which can help to restore sexual function and prevent osteoporosis. After a short time Burchfield discontinued the testosterone treatments, telling his doctors that he disliked their side effects and that he was not interested in regaining sexual function. It is not clear whether Burchfield's doctors informed him that injectable testosterone treatments could help prevent osteoporosis.

Beginning as early as 1988, Burchfield developed osteoporosis, which had become severe by 1996. As a result, he suffered various injuries, including rib and sternal fractures and collapsed vertebrae, and is at risk of further injury.

Pursuant to the requirements of 28 U.S.C. § 2675(a),[1] Burchfield filed an administrative claim on Standard Form 95 with the VA on January 17, 1996. The claim stated:

---

[1] Section 2675(a) states, in relevant part:
> An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . . The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

> Beginning August of 1990 and in subsequent years, physicians employed by the Department of Veterans Affairs prescribed a medication for Mr. Burchfield, prednisone. Mr. Burchfield's use of this medicine caused him to develop osteoporosis, resulting in severe and continuing maladies and injuries, including but not limited to the collapse or fracture of several vertebrae and ribs . . . . . These injuries resulted from negligence of the Department's agents.[2]

The claim listed thirteen doctors who had treated Burchfield. After six months, during which the VA failed to make a final disposition of the claim, Burchfield filed suit in district court. His complaint alleged, <u>inter alia</u>, that osteoporosis was a "known and anticipated effect[] of corticosteroid therapy"[3] and that his doctors were negligent in failing to initially diagnose osteoporosis, to monitor him for the condition during his treatment, and to administer a bone strengthening regimen.[4] At the bench trial, Burchfield's medical expert, Dr. Thomas Zizic, stated that prescribing the corticosteroid Prednisone did not in itself deviate from the standard of care.[5] He testified, however, that Burchfield's doctors deviated from the standard of care by treating him with Prednisone without taking certain other steps, such as performing

---

[2] R1-37 at 5. Burchfield also claimed that the VA employees' negligence caused "avascular right hip necrosis, and the replacement of his right hip with a prosthetic," <u>id.</u>, but he did not pursue this claim at trial.

[3] Compl., R1-1 at 3, ¶ 9(c).

[4] <u>Id.</u> at 2-3, ¶¶ 8-9.

[5] Trial Tr., R2-43 at 99.

initial baseline tests for osteoporosis and prescribing such supplements as calcium and Vitamin D to counteract the treatment's effects.[6]

After Dr. Zizic testified, the district court addressed the issue of its jurisdiction under the FTCA. It found that Burchfield's administrative claim had alleged only that the VA's doctors were negligent in prescribing Prednisone, while at trial Burchfield had raised a "significant[ly] different claim[]" that the VA had "caus[ed] or contribut[ed] to the exacerbation of osteoporosis by failing to diagnose it properly and by failing to treat it properly."[7] On the basis of this distinction, the district court held that Burchfield had failed to meet the requirements of section 2675(a) by putting the VA on notice of his allegations, and that it therefore lacked subject matter jurisdiction over Burchfield's claim. The court entered judgment as a matter of law in favor of the United States.

## II.

We review a district court's grant of judgment as a matter of law de novo. Morris v. Crow, 117 F.3d 449, 455 (11th Cir. 1997).

A plaintiff bringing a claim against the United States under the FTCA must first present the claim to the appropriate federal agency and wait for the agency to finally deny it. An agency's failure to dispose of a claim within six months is deemed to be

---

[6] Id. at 52-60, 99.

[7] Trial Tr., R2-43 at 146.

5

a final denial. See 28 U.S.C. § 2675(a). A district court only has jurisdiction over an FTCA action if the plaintiff has met section 2675(a)'s requirements. See Bush v. United States, 703 F.2d 491, 494 (11th Cir. 1983).

To satisfy section 2675(a), a claimant must do two things: "(1) give[] the [appropriate] agency written notice of his or her claim sufficient to enable the agency to investigate and (2) place[] a value on his or her claim." Adams v. United States, 615 F.2d 284, 289 (5th Cir.), decision clarified on denial of reh'g, 622 F.2d 197 (5th Cir. 1980).[8] Because Burchfield's administrative claim placed a dollar value on his alleged damages,[9] the only issue before us is whether his claim gave notice of the allegations he made at trial. We must determine whether the administrative claim's statement that Burchfield's "use of [Prednisone]" caused his injuries, along with its list of medical providers, was sufficient to put the VA on notice that Burchfield could allege negligence in matters closely related to the Prednisone prescription, such the doctors' failure to prescribe supplements to counteract the Prednisone's effects. We hold that Burchfield's administrative claim did put the VA on notice of such allegations. The legislative history of section 2675(a) and our own precedents guide our inquiry.

---

[8] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[9] See R1-37 at 2, 3.

6

Congress had a dual purpose in enacting section 2675(a): to encourage prompt settlement of claims and to ensure fairness to FTCA litigants. The Senate reported that the law was intended to "provid[e] for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." S. Rep. No. 89-1327, at 2 (1966), reprinted in 1966 U.S.C.C.A.N. 2515, 2515-16 (quoting House report). It further stated that the administrative claim requirement, by giving agencies an opportunity to settle suits before litigation commenced, would "ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." Id. at 2, reprinted in 1966 U.S.C.C.A.N. 2515, 2516 (quoting House report); see also McNeil v. United States, 508 U.S. 106, 111-12, 113 S. Ct. 1980, 1983 (1993) (stating that purpose of section 2675(a) is to give federal agencies "a fair opportunity to investigate and possibly settle . . . claim[s]"); Adams, 615 F.2d at 288 (noting legislative history evidencing statute's purpose). Congress, therefore, enacted section 2675(a) not to place procedural hurdles before potential litigants, but to facilitate early disposition of claims. See, e.g., Lopez v. United States, 758 F.2d 806, 809 (1st Cir. 1985) ("[I]ndividuals wishing to sue the government must comply with the details of [section 2675], but . . . the law was not intended to put up a barrier of technicalities to defeat their claims.").

7

We keep section 2675(a)'s underlying purpose in mind when considering the amount of information it requires from a potential litigant. We have held that a claimant must give an administrative agency only enough information to allow the agency to "begin its own investigation" of the alleged events and explore the possibility of settlement. Adams, 615 F.2d at 292. We do not require the claimant to provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery, see Brown v. United States, 838 F.2d 1157, 1160-61 (11th Cir. 1988), or every factual detail that might be relevant, see Adams, 615 F.2d at 291-92. In short, the amount of information required is "minimal." Id. at 289.

An administrative agency is deemed to be on notice not only of the theories of recovery stated in the claim, but of the theories of recovery that its reasonable investigation of the specific allegations of the claim should reveal. In Rise v. United States, 630 F.2d 1068 (5th Cir. 1980), the plaintiff presented an administrative claim that Army physicians failed to diagnose and treat his wife's aneurysm. After bringing suit on that assertion, he amended his complaint to allege that the Army also was negligent in referring his wife to a civilian hospital and failing to supervise her treatment there. We stated that "if the Government's investigation of Rise's claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim." Id. at 1071.

The district court in this case noted <u>Rise</u>'s holding that an administrative claim does not need specifically to enumerate all possible theories of liability. It nonetheless found that Burchfield's claim could not give notice of the issues raised in his lawsuit; this was not because Burchfield had failed to lay out all of his legal theories, but because he had not drawn the VA's attention to certain facts, such as his doctors' failure to diagnose osteoporosis, perform initial tests, and prescribe Vitamin D or calcium.[10] We conclude that the court interpreted <u>Rise</u> too narrowly. An administrative claim can put an agency on notice of theories of liability not spelled out therein. All that is required is that the theory put forward in the complaint filed in the district court be based on the facts that are stated in the administrative claim.

In this case, it is hard to imagine what facts Burchfield could have included in his administrative claim that would have allowed the VA to conduct a more thorough investigation of the claim. The claim stated all the essential aspects of Burchfield's case—the time period, the fact that his doctors had prescribed Prednisone, the causal link between his use of the Prednisone and his osteoporosis, and the assertion that the VA's agents were negligent—although it did not contain every factual detail that he later introduced at trial. These other details, such as his doctors' failure to prescribe dietary supplements and to monitor his condition, were so closely related to the

_____

[10] Trial Tr., R2-43 at 140-46.

9

essential material contained in the claim that they would have come to light during the VA's reasonable investigation of the claim. An agency cannot use an overly technical reading of the language of a claim as a reason to turn a blind eye to facts that become obvious when it investigates the alleged events.

In <u>Rise</u>, we held that because the plaintiff's administrative claim mentioned a patient's transfer to a civilian hospital, "the Army's investigation of the death should have produced . . . evidence that [the civilian hospital's] facilities may have been inadequate . . . and, consequently, that referring Mrs. Rise there might have been negligence." <u>Rise</u>, 630 F.2d at 1071. The Second Circuit similarly has held that an administrative claim can put an agency on notice of facts it should discover during its investigation of the claim. In <u>Johnson by Johnson v. United States</u>, 788 F.2d 845, 848-49 (2d Cir. 1986), it found that an administrative claim, which alleged that a government employee had attacked a minor but did not mention facts suggesting that anyone other than the employee was at fault, gave the government sufficient notice of the plaintiff's negligent supervision claim. "Although the claim supplied no facts evidencing negligent supervision and did not allege all the factual elements of such a theory of liability, a reasonably thorough investigation of the incident should have uncovered any pertinent information in the government's possession relating to the

agency's knowledge, or lack of knowledge, of any prior sexual misconduct by its employee . . . ." Id. at 849 (citing Rise).

Our holding does not mean that agency investigations must go beyond the scope of the matters alleged in administrative claims. Section 2675(a) does not require an agency to undertake an independent search for injuries or theories of liability that are not closely related to the matters described in the claim. See Orlando Helicopter Airways v. United States, 75 F.3d 622, 626 (11th Cir. 1996) (holding that contract readjustment claim alleging misconduct by a whistleblower did not give notice of allegations of misconduct by government officials); Bush, 703 F.2d at 495 (holding that administrative claim alleging medical malpractice that contained no challenge to consent form or disclosure of risks did not give notice of claim based on lack of the patient's informed consent); see also Deloria v. Veterans Admin., 927 F.2d 1009, 1012 (7th Cir. 1991) (holding that investigation of charge that officials altered medical records would not give notice of malpractice charges that involved "wholly distinct incidents"). Nor does our interpretation of the statute mean that an agency will be on notice of all the facts contained in voluminous records presented by a claimant, if the claimant has not pointed to specific sources of injury. See Bembenista v. United States, 866 F.2d 493, 498-99 (D.C. Cir. 1989) (holding that plaintiff did not satisfy notice requirement when the few facts at issue were buried in "more than 400 pages

11

of medical records, transcripts, and Army documents"); <u>Deloria</u>, 927 F.2d at 1012 (citing <u>Bembenista</u>). Finally, a claim may be so vague or lacking in detail that the agency cannot be expected to initiate any investigation at all. <u>See</u> <u>Tidd v. United States</u>, 786 F.2d 1565, 1568 (11th Cir. 1986) ("For an agency to be able to initiate an investigation into a tort claim . . . it must be apprised of the location and approximate date of the incident."); <u>see also</u> <u>Romulus v. United States</u>, 160 F.3d 131, 132 (2d Cir. 1998) ("A claimant must provide more than conclusory statements which afford the agency involved no reasonable opportunity to investigate.").

Here, Burchfield's administrative claim stated that his doctors prescribed Prednisone and that his "use of" the Prednisone caused osteoporosis. It gave the VA sufficient information, including the dates of his treatment and the names of his doctors, to allow the VA to refer to the medical records in its possession to investigate Burchfield's use of the medication and the surrounding circumstances. Burchfield presented evidence, in the form of Dr. Zizic's testimony, that a doctor who prescribed Prednisone to a patient in Burchfield's condition had a duty to monitor, and take steps to prevent, the medication's side effects. A person with reasonable expertise in medicine, investigating Burchfield's claim that his use of Prednisone caused osteoporosis, would therefore have asked whether the doctors who prescribed the Prednisone also undertook the closely related tasks of prescribing appropriate

accompanying medication, such as calcium and Vitamin D, and monitoring the drug's effects, and would have discovered that they did not. Thus, Burchfield's administrative claim satisfied the requirements of section 2675(a) by giving the VA notice of the claims that he raised at trial, and the district court erred in finding that it lacked subject matter jurisdiction.

## III.

Accordingly, we REVERSE the decision of the district court and REMAND the case for further proceedings in accordance with this opinion.