**Charlene LANGLEY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV 00–00760 SOM–BMK.**

United States District Court, D. Hawai'i.

Jan. 4, 2002.

Jack Schweigert, Honolulu, HI, for Plaintiffs.

Wes Porter, Asst. U.S. Atty., Office of the U.S. Attorney, Honolulu, HI, for Defendants.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

MOLLWAY, District Judge.

### I. INTRODUCTION.

Plaintiff Charlene Langley ("Langley") says that she suffered injuries when she fell at the Barbers Point Bowling Alley, which is on a military base. Langley timely filed an administrative claim, stating that she "tripped on a metal piece at the top of the stairs" while walking to the bowling alley. Langley has now abandoned this theory. Accordingly, Defendant United States of America is entitled to summary judgment on Langley's claims arising out of her allegation that she tripped on a metal piece at the top of the stairs.

At her recent deposition, Langley presented a new theory of liability. Langley now says that she did not trip over any metal strip at the top of the stairs. Instead, she argues that the design of the stairs was defective, as the second stair from the top allegedly had a shorter run or width than the other stairs and as there was no railing that she could grab to prevent her fall. No theory of defective design was presented to the administrative agency. Even reading Langley's Complaint liberally, the court finds no suggestion of such a theory in her pleading. In

the usual case, this court would grant Langley leave to amend her Complaint to add her new claims. However, this is not the usual case, as the deadline for filing a motion to amend the Complaint has passed and Langley has not demonstrated good cause on this record for an extension of the deadline for filing such motions. Even if Langley could demonstrate good cause as to why she did not move to amend her Complaint earlier, Langley has failed to show that she exhausted her administrative remedies with respect to her theory that differing widths of the stairs constituted a design defect. Accordingly, it would be futile to allow Langley to amend her Complaint to add that claim.

With respect to Langley's new claim that the lack of a handrail constituted a design defect, Langley possibly did exhaust her administrative remedies. However, because Langley has not shown good cause for having failed to move to amend her Complaint at an earlier date, the court declines to allow her to amend her Complaint to add that claim. If Langley desires to amend her Complaint to add a claim based on the lack of a handrail, she must move before the Magistrate Judge assigned to this case for leave to do so, and she must show good cause justifying her delay.

## II. BACKGROUND FACTS.

Throughout the administrative process and most of the proceedings in this court, Langley maintained that she was injured when she tripped over a metal piece protruding from the top of the stairway to the Barbers Point Bowling Alley. For example, in her claim to the Department of the Navy ("Navy"), Langley said that, on September 5, 1999, she "tripped on a metal piece at the top of the stairs." See Ex. A. Similarly, on July 18, 2000, Langley's attorney wrote to the Navy, telling it that, on "September 5, 1999, Ms. Langley tripped on a metal piece protruding at the top of the stairs of the Barber's Point Bowling Alley." Ex. 5.[1]

On or about August 31, 2000, after investigating Langley's claim that she had tripped on a metal piece protruding from the top of the stairs, the Navy determined that it was not negligent and therefore not liable. See Ex. 15. This lawsuit followed. See Complaint (filed November 21, 2000). In her Complaint, Langley again alleged that she "suffered severe injuries when she tripped on a metal piece protruding at the top of the stairs of the Barber's [sic] Point Bowling Alley.... This protruding metal piece caused Plaintiff CHARLENE LANGLEY to fall and land at the bottom of the stairwell." Complaint ¶ 6. Langley alleged that the United States knew or should have known about the protruding metal piece. Id. ¶ 8. She further contends that the United States was negligent in failing to maintain the stairway, to eliminate the risk that people would trip on the protruding metal piece, and to warn of that risk. Id. ¶¶ 10, 15.

At the scheduling conference held in March 2001 in this action, Langley continued to assert that she "tripped on a metal piece protruding at the top of the stairs." See Ex. E. Recently, however, Langley changed the theory of her case. Langley now says that she did not trip over the metal strip located at the top of the stairs. Instead, she claims that she fell because the steps on the stairs are of different widths and the stairs lack a handrail. Deposition of Charlene E. Langley (Nov. 19, 2001) at 57. Langley now says that her fall had nothing to do with a metal strip at the top of the stairs. Id. at 26, 57.

## III. STANDARD OF REVIEW.

Summary judgment shall be granted when:

---

**1.** The United States has stipulated to the au- thenticity of Langley's exhibits.

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323, 106 S.Ct. 2548. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000).

The burden initially lies with the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv.*, 809

F.2d at 630 (quotation omitted). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact"). "[I]f the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987) (*citing Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988); *accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion").

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.*, 809 F.2d at 631. All evidence and inferences must be construed in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

IV. *ANALYSIS.*

A. *The United States is Entitled to Summary Judgment on Langley's Current Complaint.*

The remaining portions of Lang-

ley's Complaint[2] are based on the premise that she tripped on a metal strip located at the top of the stairs to the Barbers Point Bowling Alley. Langley, however, has admitted this did not occur. Although she had claimed throughout the administrative process and through much of this action that she tripped on the metal strip at the top of the stairs, Langley now says that she fell because the stairs were of differing widths and because the stairs lacked a handrail. Because the Complaint is premised entirely on Langley's tripping on the metal strip on the top of the stairs, which Langley has now admitted did not occur, the United States is entitled to summary judgment on the remainder of Langley's Complaint.

### B. Leave to Amend the Complaint is Not Granted.

■ Even under the liberal notice pleading requirements of Fed.R.Civ.P. 8, Langley's Complaint cannot be read as encompassing claims based on a defective design of the stairs. Langley's Complaint specifically alleges that she tripped over a protruding metal strip at the top of the stairs and that the metal strip was protruding because it was not properly maintained and was in "disrepair." *See* Complaint ¶¶ 6–11. The Complaint makes no mention of any alleged design defect.

In other circumstances, this court would grant leave to amend the Complaint to assert new theories of liability, The court declines to grant Langley such leave. The deadline for filing motions to amend pleadings has long since passed. *See* Rule 16 Scheduling Order (March 19, 2001) (setting June 29, 2001, as the deadline to amend

pleadings). Langley has not demonstrated on the present record good cause that would justify any late amendment of her Complaint. Moreover, based on the record currently before the court, it would be futile to allow an amendment to add a claim based on differing widths of the stairs, as Langley has not demonstrated that she exhausted her administrative remedies with respect to that claim.[3]

■ An action may be brought against the United States only to the extent that the government waives its sovereign immunity. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). *Accord Blackburn v. United States,* 100 F.3d 1426, 1429 (1996). The Federal Tort Claims Act ("FTCA") waives the United States' immunity from suits for certain torts committed by federal employees acting within the scope of their employment. In those waived circumstances, the FTCA makes the United States liable to the same extent as a private party would be for those torts. 28 U.S.C. § 2674; *see Orleans,* 425 U.S. at 813, 96 S.Ct. 1971.

Exhaustion of administrative remedies is a jurisdictional prerequisite to the bringing of a claim under the FTCA. *See* 28 U.S.C. § 2675. There are two purposes behind the exhaustion requirement: 1) easing court congestion and avoiding unnecessary litigation, while making it possible for the government to expedite fair settlement of tort claims; and 2) providing for more fair and equitable treatment of private individuals and claimants when they litigate with the government. *See Shipek v. United States,* 752 F.2d 1352, 1354 (9th Cir.1985).

---

**2.** The court has already dismissed the claims brought by Langley's husband, Scott Langley, leaving only Langley's claims for further adjudication. *See* Amended Order Granting Defendant's Motion to Dismiss (Nov. 13, 2001).

**3.** Although the United States had argued that Langley also failed to timely name her expert witness for the design defect claim, the United States has since withdrawn that argument. *See* Letter from Jack Sweigert to Wes R. Porter (Aug. 23, 2001) (extending the expert report deadline to Oct. 1, 2001).

The Ninth Circuit has held that these purposes are served when a claim gives an agency sufficient notice to commence investigation and when the claimant places a value on the claim. *Id.*

█ Langley put an extremely narrow issue before the Navy by claiming that the metal strip on the top of the stairs caused her fall. The Navy investigated this narrow issue. It did not, however, investigate the broader issue of whether the stairs were defectively designed. The Navy could not have settled Langley's claims in a fair manner if it was not put on notice of Langley's design defect claims. The Navy's investigation surrounding Langley's alleged fall focused on whether the metal strip at the top of the stairs could have caused that supposed fall. The Navy appears to have concluded that the metal strip did not cause the fall. Accordingly, the Navy felt that it was not liable to Langley. Had Langley put the Navy on notice that she was contending that the stairs were defectively designed, the Navy would have had an opportunity to examine the stairs for such a defective design and make an appropriate settlement decision. Langley's allegations, however, did not sufficiently put the Navy on notice of any defective design claims to allow the Navy to begin any investigation of those claims.

Langley argues that, although she did not specifically assert design defect claims before the Navy, the Navy was put on notice of those claims. Citing *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir.1999), Langley argues that her new theories were part of her original claim to the Navy because the Navy's "reasonable investigation" of her fall should have revealed the design defects. *Burchfield* stated that an administrative claim can put an agency on notice of theories of liability not specifically spelled out in the administrative claim. *Id.* at 1256. "All that is required is that the theory put forward in the complaint filed in the district court be based on the facts that are stated in the administrative claim." *Id. Burchfield* involved a claim to an administrative agency that a patient developed osteoporosis as a result of medication prescribed by Veterans Affairs physicians. The *Burchfield* panel held that the patient's administrative claim was so closely related to the patient's later theories of negligence leading to his osteoporosis (that the doctors failed to prescribe dietary supplements and failed to monitor his condition) that the agency's reasonable investigation of the patient's claim should have uncovered the new theories. *Id.*

Even assuming that the Eleventh Circuit's test is applicable to this case, Langley has not demonstrated that she should be allowed to amend her Complaint to add a claim based on differing widths of the stairs. Langley's claim to the Navy specifically alleged that she tripped over a metal strip at the top of the stairs. Langley's claim that she missed the second step from the top because it was narrower than the other steps cannot possibly be said to be based on the facts presented by a claim that a metal strip at the top of the stairs caused the fall. Accordingly, this court concludes that Langley did not exhaust her administrative remedies with respect to the stair width issue. Langley therefore may not amend the Complaint to add that claim.

By contrast, a reasonable investigation by the Navy might arguably have uncovered the lack of a handrail. If *Burchfield* applied here and were read liberally, Langley might be able to show that her administrative claim required the Navy to identify the lack of a handrail as a design defect. However, because Langley failed to demonstrate on this motion why she did not timely seek leave to amend her Complaint, the court does not reach that issue.

While not opining on whether leave to amend should be granted, the court does not foreclose a motion by Langley seeking leave to amend her Complaint after the expiration of the deadline, based on good cause, to add a design defect claim based on the alleged lack of a handrail. Any such motion should be directed to the Magistrate Judge assigned to this case.

## V. CONCLUSION.

Langley's Complaint does not state any claim arising out of a defective design of the stairs. Instead, it is limited to allegations about a metal strip. Because Langley has now admitted that she did not trip on the metal strip, the United States is entitled to summary judgment on her Complaint.

If Langley wishes to amend her Complaint to add a defective design claim based on the lack of a handrail, she must seek leave from the Magistrate Judge assigned to this case to do so and must show good cause for her delay. If no such motion is received by January 10, 2002, the Clerk of the Court shall close this case and enter judgment in favor of the United States. If such a motion is filed on or before January 10, 2002, judgment shall not be entered unless Langley's motion to amend the Complaint is denied. If Langley does file such a motion, the parties shall address with the Magistrate Judge the issue of the upcoming trial date, which the Magistrate Judge may adjust as appropriate.

IT IS SO ORDERED.