United States Court of Appeals,

Fifth Circuit.

No. 93-1659.

Chester L. FRANTZ and Vera Frantz, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Aug. 23, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before WISDOM and JONES, Circuit Judges, and COBB,[*] District Judge.

COBB, District Judge:

Appellants, Chester and Vera Frantz, brought this medical malpractice action against the United States under the Federal Tort Claims Act.[1] The Frantzes appeal the dismissal of their informed consent claim for lack of subject matter jurisdiction, as well as the district court's failure to allow them leave to designate an expert witness after the presumptive deadline established by the Northern District of Texas local rules. We reverse.

I.

The facts of this case are not in dispute. In January 1988, Chester Frantz was admitted to the Veterans Administration Medical Center [VA Medical Center] in Dallas, Texas, complaining of difficulty in breathing through his nose. Dr. Craig J. Summers operated on him in an attempt to correct a nasal airway septal

---

[*]District Judge of the Eastern District of Texas, sitting by designation.

[1]See 28 U.S.C. §§ 1346, 2671-2680.

1

deviation. Following the surgery, Frantz experienced blurriness and a temporary loss of vision in his left eye. Before his discharge from the hospital, Frantz notified Dr. Sesi of his blurred vision.

Frantz continued to experience breathing problems. He returned to the VA Medical Center, where he was readmitted on August 10, 1988. Dr. Thomas N. Morrish diagnosed Frantz as having a nasal airway obstruction. The next day, Frantz again underwent surgery. Dr. Summers, assisted by Drs. Morrish and Cameron D. Godfrey, performed an open rhinoplasty with a cartilage graft. Soon after the operation, Frantz experienced a loss of vision in his left eye. On examination by Dr. Summers and an ophthalmologist, Frantz was found to have a central retinal artery occlusion which has caused permanent loss of vision in his left eye.

Chester and Vera Frantz each filed a Standard Form 95 with the Veterans Administration in an effort to recover damages for Frantz's injury. The VA denied their administrative claim, and the Frantzes filed this suit on April 20, 1990, alleging negligence in the care and treatment of Frantz. In their Third Amended Original Complaint, the Frantzes additionally claimed that the government failed to obtain informed consent from Frantz prior to the second surgery.

The government objected to the informed consent claim, arguing that it was not properly presented in the administrative claim. The district court agreed and dismissed the claim under FED.R.CIV.P.

2

12(b)(1) for lack of subject matter jurisdiction.

The court originally set the case for trial on December 7, 1992.  On May 27, 1992, however, the case was transferred to a different judge.  After the transfer, the court directed the parties to prepare a Joint Status Report on the case.  In the report, the parties requested a December 7, 1992 trial setting.  Thereafter, on October 21, 1992, the appellants moved to designate Frantz's treating doctor, Thomas Morrish, as their expert witness.  Both parties had previously designated Dr. Morrish as a fact witness and his deposition had been taken.  The following day, the court confirmed the December 7th trial setting.

After the confirmation of the trial setting, the government objected to the designation of Dr. Morrish as untimely under Northern District of Texas Local Rule 8.1(c)[2] and moved for summary judgment.  This triggered a flurry of responses and replies, including the Frantzes' submission of Dr. Morrish's deposition testimony to the court.[3]  In his deposition, Dr. Morrish stated that he would not have performed the second operation if he had been aware of Mr. Frantz's temporary loss of vision following the

---

[2]Northern District of Texas Local Rule 8.1(c) provides: "Designation of Expert Witnesses.  Unless otherwise directed by the Presiding Judge, each party shall file a written designation of its expert witnesses at least 90 days before trial." Accordingly, September 8, 1992 was the last day to designate expert witnesses.

[3]The deposition was contained in the Plaintiffs' motion for leave to file a supplemental response to Defendant's motion for summary judgment.

3

earlier operation.[4] Despite the submission of Dr. Morrish's deposition, the district court granted the government's motion for summary judgment on the Frantzes' remaining negligence claim. Implicitly denying the motion for leave to designate Dr. Morrish, the court apparently found the appellants had failed to provide any evidence admissible at trial to defeat summary judgment.

## II.

In their first point of error, the Appellants contend that the district court erred in dismissing their informed consent claim. Specifically, they urge that their administrative claim was sufficient to put the government on notice of a possible claim for lack of informed consent. We agree.

As a jurisdictional prerequisite to bringing a lawsuit under the Federal Tort Claims Act, a plaintiff is required to "first [present his or her] claim to the appropriate Federal agency ..." 28 U.S.C. § 2675(a). Congress instituted the presentation requirement "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.REP. No. 1327, 89th Cong., 2d Sess. 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2515, 2516. Section 2675(a) is satisfied, therefore, "if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Adams v. United States,* 615 F.2d 284, 289, *clarified,* 622 F.2d 197 (5th Cir.1980).

---

[4]Deposition of Thomas Morrish, at 18-19.

4

This court has not required plaintiffs to specifically enumerate legal theories of recovery in their administrative claims. As we stated in *Rise v. United States,* 630 F.2d 1068 (5th Cir.1980), the purpose of § 2675

> will be served as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant. Accordingly, we think that if the Government's investigation of [the plaintiffs'] claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim. *Rise,* 630 F.2d at 1071.

In the present case, the administrative claim provided sufficient facts to enable the government to investigate its potential liability and to conduct settlement negotiations with the Frantzes. The administrative claim provided the date, location, and description of Mr. Frantz's injury. In response to the instructions to state the nature and extent of injury and to provide a description of the accident, the Frantzes stated "negligence in surgery causing blindness" and "negligence in nasal surgery on husband causing him to be blind." Moreover, the claim named "[a]ll medical personnel who cared for Chester Frantz" as potential witnesses. Finally, the Frantzes sought $2 million for the injury.

Furthermore, the government's investigation of the administrative claim should have revealed the possibility of an informed consent claim. Under Texas law,[5] a suit for the failure

---

[5]Under the Federal Tort Claims Act, the law of the state in which the alleged tort occurred controls. 28 U.S.C. § 1346(b); *See Richards v. United States,* 369 U.S. 1, 6-8, 82 S.Ct. 585, 589-90, 7 L.Ed.2d 492 (1962).

of a doctor to fully inform a patient of the risks of surgery sounds in negligence. TEX.REV.CIV.STAT.ANN. art. 4590i § 6.02 (Vernon Supp.1994);[6] *McKinley v. Stirpling,* 763 S.W.2d 407, 409 (Tex.1989). By its very nature, the informed consent claim is included in the Frantzes' allegation of negligence in their administrative claim.[7]

We therefore hold that the administrative claim provided the government with sufficient information to conduct a full investigation and to put it on notice of the possibility of the informed consent claim. Consequently, we reverse its dismissal.

The government argues that *Bush v. United States,* 703 F.2d 491 (11th Cir.1983) suggests an opposite conclusion. In *Bush,* the Eleventh Circuit summarily affirmed the district court's dismissal of the plaintiff's informed consent claim. The court's skeletal description of the administrative claim and its contents makes

---

[6]Section 6.02 provides: "In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." TEX.REV.CIV.STAT.ANN. art. 4590i § 6.02 (Vernon Supp.1994).

[7]Furthermore, in light of the caselaw and Congressional purpose of § 2675(a), the court refuses to limit the word "in," as used in the administrative claim, to the actual surgical procedure. The term "[i]n ... is synonymous with expressions "in regard to,' "respecting,' [and] "with respect to,' ..." BLACK'S LAW DICTIONARY, at 683 (5th ed. 1979).

application of the case troublesome.[8]  Furthermore, application of *Bush* to the present case runs counter to the minimal notice requirement announced in *Rise* and *Adams, supra.*[9]  In light of these cases, as well as the statutory purpose of Section 2675(a), we decline the government's invitation to follow *Bush.*

## III.

Our disposition of appellants' first point of error pretermits review of the denial of the appellants' motion to designate expert witnesses and the district court's resulting grant of summary judgment.  On remand, the district court will presumably establish a revised trial timetable.  Because such a plan will necessarily include a revised deadline for the designation of expert witnesses, the district court's grant of summary judgment based on the appellants' failure to produce admissible expert opinion evidence will become moot.  For the above reasons, the case is

*REVERSED* and *REMANDED.*

---

[8]Moreover, *Bush* was apparently based in part on Florida informed consent law.  *See* note 5, *supra.*  The Florida Medical Consent statute formerly provided:  "A consent which is evidenced in writing ... shall, if validly signed by the patient or another authorized person, be conclusively presumed to be a valid consent."  FLA.STAT.ANN. § 768.46(4)(a), *amended by,* § 766.103(4)(a).  However, three years after the decision in *Bush,* the Florida Supreme Court held that the consent must also be "informed" before the presumption of validity will attach. *Parikh v. Cunningham,* 493 So.2d 999, 1001 (Fla.1986).

[9]*See also Mellor v. United States,* 484 F.Supp. 641 (D.Utah 1978) (administrative claim which alleged "[n]egligent care and treatment by medical and hospital personnel resulting in damage to [plaintiff]" properly presented informed consent claim).

7