Rehearing en banc granted by order
filed 9/8/00; opinion issued 6/27/00
is vacated

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STERLING DREW, a minor under the
age of thirteen years, by guardian
ad litem Martha Drew; MARTHA
DREW; JEBEDIAH DREW,

Plaintiffs-Appellants,

No. 99-1009

v.

UNITED STATES OF AMERICA,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-98-1817-3-19)

Argued: January 27, 2000

Decided: June 27, 2000

Before WILLIAMS, MICHAEL, and KING, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge King wrote the
opinion, in which Judge Michael joined. Judge Williams wrote a dis-
senting opinion.

_____

**COUNSEL**

**ARGUED:** Mortimer Meyer Weinberg, III, WEINBERG &
BROWN, Sumter, South Carolina, for Appellants. Jon Rene Josey,
United States Attorney, Columbia, South Carolina, for Appellee. **ON**

**BRIEF:** Frances C. Trapp, Assistant United States Attorney, Columbia, South Carolina; Major Eric S. Israel, Chief Medical Law Branch, Tort Claims Litigation Division, AIR FORCE LEGAL SERVICES AGENCY, Arlington, Virginia, for Appellee.

_____

## OPINION

KING, Circuit Judge:

The infant Sterling Drew ("Sterling") and his parents appeal the dismissal of their action under the Federal Tort Claims Act ("FTCA") for injuries allegedly caused by birth control medication administered by medical personnel of the United States Air Force. The district court decided that it lacked jurisdiction over the subject matter because the claim had not been properly exhausted, as required by the FTCA. More specifically, the court determined that the Drews' administrative claim failed to provide the Air Force with sufficient notice of its factual and legal bases. For the reasons explained below, we vacate the dismissal and remand for further proceedings.

I.

A.

The plaintiffs filed suit against the Government, seeking damages for prenatal injuries to Sterling. These injuries were allegedly caused by the birth control drug Depo-Provera, which had been administered to Sterling's mother, Martha Drew, by physicians at Shaw Air Force Base in South Carolina. Mrs. Drew's husband, Jebediah, is an enlisted serviceman on active duty with the Air Force, and the family lives on the base.

In their initial complaint, the plaintiffs alleged that Mrs. Drew was negligently given Depo-Provera while she was pregnant with Sterling. The complaint alleged that, as a result, Sterling was born with physical malformations (including an imperforate anus and a ventricular septal defect in his heart), and he will continue to suffer from various other genetic and developmental disorders. The complaint sought

2

compensation for Sterling for his injuries, and it also sought recovery by his parents of the expenses of Sterling's medical care.

In discovery, it developed that Mrs. Drew was not given Depo-Provera while pregnant, but rather became pregnant after she had been administered Depo-Provera, while the drug remained in her system. The plaintiffs thus amended their complaint to conform to the evidentiary record, asserting a cause of action for the negligent failure of Air Force medical personnel to obtain Mrs. Drew's informed consent prior to the administration of Depo-Provera.

Correspondingly, the Government moved to dismiss the amended complaint, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Government contended that the district court lacked subject matter jurisdiction to entertain the informed-consent claim, asserting that it was not encompassed within the administrative claim filed with the Air Force, as required by 28 U.S.C.§ 2675(a). The district court, on December 1, 1998, granted the Government's motion and dismissed the amended complaint with prejudice. It is from this dismissal order that the plaintiffs appeal.

B.

Between 1992 and 1995, Mrs. Drew became pregnant on five occasions while using traditional birth control medications. Of these five pregnancies, three resulted in live births and two terminated in miscarriages. After her fourth pregnancy, Mrs. Drew sought birth control counseling at Shaw Air Force Base. In the course of this counseling, Mrs. Drew was encouraged by various medical personnel at Shaw to use Depo-Provera as a means of birth control. According to her testimony, Mrs. Drew was advised by the medical personnel that Depo-Provera was one hundred percent effective in preventing live births. She was further told there was a mere one chance in one thousand that she might become pregnant while on Depo-Provera, and that if she did, the pregnancy would spontaneously abort.

Pursuant to this advice, Mrs. Drew consented to Depo-Provera therapy for birth control purposes. She received her first injection of Depo-Provera on July 28, 1994; a second injection on October 24, 1994; and a third injection on or about February 1, 1995. Despite this

3

preventative regimen, Mrs. Drew again became pregnant, and she was so diagnosed at Shaw on May 30, 1995. Contrary to the representations made by the Government's medical personnel, the pregnancy did not spontaneously abort, but culminated in the birth of Sterling on December 30, 1995. The plaintiffs maintain that Sterling's myriad birth defects are the result of being exposed to Depo-Provera in utero.

On November 21, 1996, after Sterling was diagnosed with his multiple problems, the Drews filed a claim for damages with the Air Force, pursuant to the FTCA. This administrative claim, submitted on a Standard Form 95 ("SF-95"), alleged the following as its factual predicate:

> Spontaneous delivery of male infant with imperforate anus, ventricular septal defect, left facial palsy, umbilical hernia and inguinal hernia at Shaw Air Force Base Hospital. <u>Depo-Provera injection given to claimant in early pregnancy</u>.

J.A. 94 (emphasis added). Over a year later, on December 23, 1997, the claim was denied by the Air Force.

On June 22, 1998, the plaintiffs timely filed their complaint in the district court, seeking compensation from the Government for birth defects caused by Depo-Provera and asserting, in accordance with the administrative claim, that Mrs. Drew was given Depo-Provera while she was in fact pregnant with Sterling. Thereafter, on October 30, 1998, the plaintiffs amended the complaint to restate their claim for medical negligence as one based upon lack of informed consent.

II.

The FTCA prohibits the filing of a civil action against the Government unless the underlying claim is "first presented" to the appropriate federal agency and subsequently denied. 28 U.S.C. § 2675(a).[1]

_____

[1] The pertinent portion of the statute at issue provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or

Where such a claim is not first presented to the appropriate agency, the district court must, pursuant to Fed. R. Civ. P. 12(b)(1), dismiss the action for want of subject matter jurisdiction. See McNeil v. United States, 508 U.S. 106 (1993) (upholding dismissal of suit against Government where plaintiff had not exhausted available administrative remedies); see also Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986) (exhaustion requirement is "jurisdictional"). We review de novo the district court's determination that the plaintiffs failed to properly exhaust their claim under the FTCA. Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996).

III.

A.

1.

The plaintiffs rely on the principle that a district court is not divested of jurisdiction under the FTCA where the claim presented in court is "reasonably related" to the claim presented to the administrative agency. See Harris v. United States, 797 F. Supp. 91 (D.P.R. 1992). Harris involved the alleged assault and battery of two third-grade pupils by their teacher at an elementary school located on a naval base. The plaintiffs asserted in their administrative claim that the Government-run school was liable in a supervisory capacity for the torts of its employee; before the district court, however, the plaintiffs shifted gears a bit, alleging in their complaint that the school had breached an independent duty to protect its students.

In denying the Government's motion to dismiss, the district court observed:

_____

> omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added).

5

Although a filing of an administrative claim pursuant to 28 U.S.C. § 2675(a) is a jurisdictional prerequisite to judicial action, its purpose is essentially to give notice to the Government, to conduct a meaningful investigation to adequately defend itself. It is not bound by the standards applicable to court proceedings.

Id. at 93 (footnote omitted). The court noted further that "the legal basis for relief need not be specified . . . and alternate theories of liability can be presented at judicial proceedings." Id. (citing Broudy v. United States, 722 F.2d 566, 568-69 (9th Cir. 1983), for the former proposition, and Johnson by Johnson v. United States, 788 F.2d 845, 849 (2d Cir. 1986), for the latter).**2**

2.

In response, the Government reminds us that, although the FTCA is intended to waive the sovereign immunity of the United States, Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999), such a waiver "will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996) (citing cases). According to the Government, a strict construction of the FTCA behooves us to parse the plaintiffs' complaint to determine in what respect, if any, it deviates from their prior administrative claim; to the extent that the court pleadings arguably broaden the grounds for relief beyond those previously stated, the Government urges that we reject the corresponding claim as unexhausted.

_____

**2** In short, the essentials of a proper administrative claim are even less exacting than the liberal notice-pleading standards applicable to federal court complaints. Johnson, 788 F.2d at 848 ("[A]n administrative claim need not meet formal pleading requirements . . . ."); Michels v. United States, 815 F. Supp. 1244, 1257 n.16 (S.D. Iowa 1993) (citing Johnson); Harris, 797 F. Supp. at 93 (quoting Johnson ).

6

B.

1.

We repudiate the notion that the validity of a judicial complaint under the FTCA depends on it having been cloned from its predecessor, the administrative claim. We instead agree with the Harris court that the proper focus is on whether the administrative claim affords the Government with adequate notice to properly investigate the underlying incident so that it may either reasonably assess its liability or competently defend itself. See Ahmed v. United States, 30 F.3d 514, 517 (4th Cir. 1994) ("Section 2675(a) of Title 28 and 28 C.F.R. § 14.2(a) require two elements for sufficient presentment of a claim to an agency: 1) written notice sufficient to cause the agency to investigate, and 2) a sum-certain value on the claim.") (citation omitted).[3]

Under the initial prong of the presentment requirement, then, the salient question is whether, in light of all the circumstances of a particular case, the notice afforded the Government by the claimant is sufficient. In Richland-Lexington Airport Dist. v. Atlas Properties, Inc., 854 F. Supp. 400 (D.S.C. 1994), our distinguished colleague Judge Traxler accurately noted that "[t]he sufficiency of the notice requirement under § 2675(a) `is more than a question of technical niceties.'" Id. at 409 (quoting Keene Corp. v. United States, 700 F.2d 836, 842 (2d Cir. 1983)). He elaborated:

> [N]otice must do more than cause "the government to sift through the record." Rather, notice must be sufficiently

_____

[3] In enacting Section 2675, Congress sought "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S. Rep. No. 1327, 89th Cong., 2d Sess. 2 (1966) ("S. Rep."), reprinted in 1966 U.S.C.C.A.N. 2515, 2516. Section 2675's requirement that a claim be filed before instituting suit is designed to bring the claimants' allegations to the immediate attention of the relevant agency. The purpose of this notice is "to protect the [Government] from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit." S. Rep. at 7; 1966 U.S.C.C.A.N. at 2517.

detailed so that the United States can "evaluate its exposure as far as liability is concerned." Therefore, in addition to requiring a sum certain, a claimant must provide a sufficient factual predicate so that his claim can be investigated.

Atlas Properties, 854 F. Supp. at 412 (quoting Keene Corp., 700 F.2d at 842).**4**

2.

a.

We turn now to evaluate the circumstances of the case before us. We must determine whether the factual predicate alleged by the plaintiffs in their administrative claim afforded sufficient notice to the Government to investigate the underlying conduct, such that it could reasonably assess the extent of its liability vis-a-vis the complaint that was subsequently filed.**5**

In performing our evaluation, we find it helpful to first consider a hypothetical claim -- one very similar to the actual claim but with the last three words of the factual predicate omitted:

> Spontaneous delivery of male infant with imperforate anus, ventricular septal defect, left facial palsy, umbilical hernia and inguinal hernia at Shaw Air Force Base Hospital. Depo-Provera injection given to claimant.

_____

**4** Judge Traxler concluded that the sufficiency of the notice at issue (a series of letters between the plaintiff and the Environmental Protection Agency) was "a close question," but that the plaintiff's claim had not been exhausted in any event because of the failure of the second prong of the presentment requirement, i.e., the omission from the correspondence of a demand for a sum certain as damages arising from the claim. Atlas Properties, 854 F. Supp. at 413.

**5** There is no question that the second prong of the presentment requirement was fulfilled here. The SF-95 filed by the Drews claims damages for personal injury in the amount of $15 million.

8

The rationale for our approach is simple: if this hypothetical predicate -- consisting solely of facts that we must presume to be true -- is insufficient notice of an informed-consent claim, then the further assertion that the injection occurred "in early pregnancy," demonstrably incorrect, could not have remedied the deficiency. Only if the hypothetical predicate passes legal muster will we be constrained to examine whether the additional words "in early pregnancy" would somehow render it insufficient.

In <u>Frantz v. United States</u>, 29 F.3d 222 (5th Cir. 1994), the court of appeals addressed the district court's dismissal of an informed-consent claim that was nowhere explicitly mentioned in the SF-95, which merely alleged negligence in the care and treatment of the plaintiff at a Veterans Administration hospital. The Fifth Circuit nonetheless reversed, concluding that the notice afforded the Government was sufficient:

> The administrative claim provided the date, location, and description of Mr. Frantz's injury . . . . Moreover, the claim named "[a]ll medical personnel who cared for Chester Frantz" as potential witnesses . . . . <u>Furthermore, the Government's investigation of the administrative claim should have revealed the possibility of an informed consent claim.</u> Under Texas law, a suit for the failure of a doctor to fully inform a patient of the risks of surgery sounds in negligence . . . . <u>By its very nature, the informed consent claim is included in the Frantzes' allegation of negligence in their administrative claim</u>. We therefore hold that the administrative claim provided the Government with sufficient information to conduct a <u>full investigation</u> and to put it on notice of the possibility of the informed consent claim.

<u>Id.</u> at 224-25 (citations and footnotes omitted) (emphasis added). In essence, the Fifth Circuit held in <u>Frantz</u> that there is an obligation on the part of the Government to conduct a diligent investigation, once it has been notified that it may be liable for the acts of its employees.

We would be hard-pressed to disagree. The presentment requirement of the FTCA confers upon the Government an advantage that most prospective tort defendants lack: an opportunity for informal

9

fact-gathering and deliberate reflection. Once suit has been filed and the battle joined, discovery proceeds within rigid parameters, and pensiveness is a luxury not easily indulged.

In recognition of this freedom from litigation by ambush on which Congress has conditioned the sovereign's waiver of immunity, it is incumbent upon the courts to encourage the sovereign's agents to proceed as its lawmakers have evidently intended. Liability in a given situation cannot be thoroughly and thoughtfully assessed without accurate and complete information; the Government must therefore be charged with the duty to reasonably pursue the relevant facts, rather than being permitted to fall back on a few typed sentences appearing on a pre-printed form.

A diligent investigation of a medical negligence claim entails, at the very least, a general review of the patient's records with especial regard to the chain of events leading to the complained-of injury. Included within that chain of events, as the Frantz court noted, are the circumstances underlying the patient's decision to embark on the particular course of treatment. The overarching theme is the alleged negligence of the Government's employees, and it is of little moment that the instrument of the patient's misfortune can be found in the initiation, planning, or execution of her therapy; regardless of which link proves defective, the chain of causation remains unbroken.

Hence, what might appear at first blush to be distinct claims are actually little more than alternative legal theories applicable to the same set of operative facts, akin to the situation in Harris, discussed supra at Part III.A.1. This is the import of the Fifth Circuit's observation, set forth above, that "[b]y its very nature," an informed-consent "claim" is included within a general allegation of negligent care and treatment. The plaintiff in Frantz claimed "negligence in surgery," the Texas courts had previously held that an informed-consent action sounds in negligence, and the Fifth Circuit declined to limit the words "in surgery" to the narrow procedure in which the treatment process culminated. Frantz, 29 F.3d at 224 & nn. 6-7.

South Carolina, like Texas, recognizes a cause of action for negligence where a physician fails to "inform a patient of the material risks inherent in a proposed treatment or procedure." Hook v. Rothstein,

10

316 S.E.2d 690, 698 (S.C. Ct. App.), <u>cert. denied</u>, 320 S.E.2d 35 (1984).**6** And South Carolina, in the context of discussing the evidence that the plaintiff must adduce to prevail on an informed-consent claim, has acknowledged the relatedness between the various actions that might arise from the course of a patient's treatment:

> An informed consent action is no different from any other action for professional malpractice. Underlying every medical malpractice action is the basic principle that the physician departed from a standard of reasonable care . .. . Because the question of whether the physician has acted unreasonably often involves the exercise of medical judgment, we feel that, in most cases, expert medical testimony is just as necessary to establish negligence in failing adequately to disclose as it is to prove negligence in failing to treat or diagnose properly.

<u>Hook</u>, 316 S.E.2d at 696-97. From this discussion by the Court of Appeals of South Carolina in <u>Hook</u>, it is apparent that, in South Carolina, an informed-consent claim is a specific subset of the larger universe of "medical malpractice actions."

In our view, the hypothetical predicate gives notice of a "medical malpractice action," which includes the possibility of an informed-consent claim. As was the case in <u>Frantz</u>, the hypothetical claim describes the claimant's injuries and, elsewhere in the SF-95, specifies the date and place of their occurrence. Moreover, the hypothetical claim names as potential witnesses "[a]ll medical personnel related to this specific case," in a fashion nearly identical to the claim at issue in <u>Frantz</u>.

_____

**6** The FTCA authorizes federal agency heads and the Attorney General (or her designee) to settle claims against the Government for money damages "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred[.]" 28 U.S.C. § 2672. Section 2674 confirms that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." An examination of the relevant state law, if any, is therefore necessary to determine the extent of the Government's liability in a particular case.

11

In light of the similarity of the hypothetical claim to the one at issue in <u>Frantz</u>, it should come as no surprise that our conclusion with respect to the former is the same as the Fifth Circuit's concerning the latter: the information contained within sufficed to compel the Government to thoroughly investigate the possibility that some or all of the claimant's injuries were attributable to an employee's breach of his duty to obtain the patient's informed consent.

b.

Of course, we are not dealing with a hypothetical claim in this case. We must therefore decide whether the additional, incorrect information actually alleged -- that Mrs. Drew was administered Depo-Provera "in early pregnancy" -- so narrowed the scope of a reasonable investigation that the Government may be said to have been without notice, and thus excused from failing to discover the essence of the plaintiffs' claim.

Although we can imagine a situation where a misstatement in an SF-95 could affirmatively mislead the Government such that an otherwise sufficient notice would be nullified, this is not one of those situations. The Government had complete access to Mrs. Drew's medical file at Shaw Air Force Base; those records reflected that Mrs. Drew had received her last injection of Depo-Provera weeks or months prior to Sterling's conception.**7**

Indeed, the Government was fully aware that Mrs. Drew could not have been given Depo-Provera during her pregnancy, as illustrated by the letter denying her administrative claim:

> There are several reasons for my denial. You allege that
> Mrs. Drew received an injection of Depo-Provera early in

_____

**7** According to Mrs. Drew's deposition testimony, she received a subsequent injection of Depo-Provera from the Shaw medical staff on or about February 1, 1995, see Part I-B, <u>supra</u>, but this instance is not documented in the hospital records. Assuming that Mrs. Drew's recollection is accurate, she still would have received her final treatment well before the onset of her pregnancy, which is acknowledged to have occurred in mid-to-late April.

12

her pregnancy with Sterling Drew, which caused Sterling's birth defects. Sterling Drew was born on 29 December 1995 [sic]. The record clearly demonstrates that the last documented injection was given on 24 October 1994, more than 14 months prior to Sterling's birth. Even if we accept that the final injection was given on or about 1 February 1995, as Mrs. Drew asserts, that is still 11 months prior to Sterling's birth. <u>It does not appear possible that Mrs. Drew could have received an injection of Depo-Provera while she was pregnant with Sterling</u>.

 Injections of Depo-Provera are effective for contraception for at least 12 weeks. This makes it highly unlikely that Mrs. Drew received an injection on 1 or 2 February, as she claims. However, it is certainly possible, as with any contraceptive method, for the Depo-Provera to have failed to prevent pregnancy. This hardly amounts to evidence of negligence. It is also possible that if the Depo-Provera had been injected in early February, Sterling Drew may have been exposed to progesterone pre-natally. However, there is no scientific basis for attributing any of his developmental anomalies to intra-uterine hormone exposure. Thus, not only is there no evidence of negligence in the care rendered to Mrs. Drew, there is no evidence that any act or omission relative to her OB/GYN care causally contributed to Sterling's unfortunate conditions.

Letter from Major Eric S. Israel, Chief, Medical Law Branch, Tort Claims and Litigation Division, Air Force Legal Services Agency, to M.M. Weinberg, III, Attorney for the Drews (Dec. 23, 1997) (emphasis added).**8**

_____

**8** This letter was, rather inexplicably, omitted from the record below. At our request, counsel for the parties have provided us with a copy. Although our dissenting colleague chides us for taking note of the letter, <u>post</u> at 23, we refer to it primarily to demonstrate how far afield the Government's inquiry was from the crux of the claim ultimately asserted, a point on which there appears no dispute. We instead part ways with the dissent over the likely reason for the miscue: while we take Judge Williams to argue that the Government was affirmatively misled by the allegations of the administrative complaint, we believe that the Government simply failed at the threshold to undertake an adequate investigation. <u>See</u> <u>infra</u> Part III.B.2.c.

The denial letter is interesting in several respects. First, there is no mention of any investigation concerning whether Mrs. Drew was properly informed of the risks of Depo-Provera therapy. Second, even if such an investigation had been undertaken, it is plain that the Government's position regarding its liability would not have been different, inasmuch as the letter contends that Sterling's injuries were not caused by exposure to Depo-Provera. Lastly, if Mrs. Drew's account of what she was told by the Shaw medical staff is believed, i.e., that Depo-Provera was one hundred percent effective in preventing live births, the admissions contained in the last-quoted paragraph (not to mention Sterling's very existence) belie the reasonableness of that advice.

c.

We accordingly conclude that the administrative claim filed in this case provided the Government with notice sufficient to evaluate its liability for damages. The Air Force was notified that a child suffering from numerous physical defects had been born in one of its base hospitals, and that these defects had allegedly resulted from the dispensing of Depo-Provera by one of its employees. At this point, it was up to the Government to fully investigate the matter and fill in the details by asking the right questions, beginning with "Were the risks of selecting Depo-Provera as a contraceptive reasonably and accurately explained to Sterling's mother before we embarked on that course of treatment?" That the claim form contained a minor factual inaccuracy should not have deterred the Government from acting reasonably by dotting its "i"s and crossing its "t"s. **9**

_____

**9** The dissent, post at 23, is quick to point out that (1) the complaint initially filed in the district court did not plead the specifics of the informed-consent claim, inasmuch as its existence was not made plain until Mrs. Drew was deposed by the Government, see supra at 3; and (2) Mrs. Drew agreed to continue Depo-Provera therapy in February 1996, about six weeks after Sterling was born. Neither of these circumstances persuade us that we should reach a different result in this case.

Of course, anything that counsel for the Drews may (or may not) have known about the details of his clients' claims prior to filing suit is of secondary importance to what the Government was obliged to ascertain

14

3.

We recognize that our decision today may be in some tension with that in Murrey v. United States, 73 F.3d 1448 (7th Cir. 1996). In Murrey, as in Frantz and this case, the Government argued for the dismissal of the plaintiff's informed-consent claim on the ground that it had not been alleged in the SF-95. Judge Posner began his analysis as follows:

> [T]o base a suit on lack of informed consent Murrey's estate was required to include, or at least to allude to, the issue of informed consent in the administrative claim. The statute requires a plaintiff to file his or her "claim" with the relevant agency . . . in layman's terms a legal basis for suit. The plaintiff has two such bases. The main one . . . is negligence in the treatment of Mr. Murrey when, on the morning following the operation, he began to hemorrhage internally. The subordinate one is the failure to obtain his informed consent to the operation. They are therefore separate claims within the meaning of the civil rules.

_____

under the FTCA. Indeed, we daresay that had the Government asked Mrs. Drew the same questions in its initial investigation as it did during her deposition, there would have been little need to litigate the question of notice.

As for Mrs. Drew's continued use of Depo-Provera, the record does not reveal when she began to suspect that the drug may have caused Sterling's birth defects (though we can surmise that it was prior to her seeking the advice of counsel in August 1996, see J.A. 61). Any significance that might be ascribed to Mrs. Drew's actions in this regard, however, relates strictly to the merits of her informed-consent claim; it is wholly irrelevant to the discrete issue before us, i.e. , whether the claim may be properly alleged to begin with. In fact, although the dissent interprets Mrs. Drew's post-event use of Depo-Provera as evidence that she accepted the risks associated with the drug (thus relieving the Government of its burden to investigate this aspect of its treatment), it seems to us just as likely that her actions evidenced a misapprehension of the magnitude of those risks.

15

<u>Murrey</u>, 73 F.3d at 1451. Judge Posner acknowledged, however, that "the fact that failing to file a timely administrative claim has such a fell consequence argues for greater liberality in determining whether the administrative claim is adequate," <u>id.</u> at 1452, observing that "the claim encompasses any cause of action fairly implicit in the facts." <u>Id.</u> Judge Posner continued:

> We do not go so far as the Fifth Circuit, which in <u>Frantz v. United States</u> . . . held that a claim of failure to obtain informed consent is implicit when the administrative claim alleges medical negligence and investigation would turn up the facts showing that failure. We agree rather . . . that the administrative claim must narrate facts from which a legally trained reader would infer a failure to obtain informed consent.

<u>Murrey</u>, 73 F.3d at 1453.**10**

It is fair to say, based on Judge Posner's opinion in <u>Murrey</u>, that the Seventh Circuit, if faced with the question before us, would likely conclude that the notice submitted in this case was insufficient to confer jurisdiction on the district court over the Drews' informed-consent claim. To the extent that our sister circuit would require a more detailed exposition than we approve today, we respectfully disagree that such is necessary. We instead align ourselves with the view of the Fifth Circuit as set forth in <u>Frantz</u>, in agreement with the Eleventh Circuit's most recent pronouncement on the matter:

> Congress . . . enacted section 2675(a) not to place proce-

_____

**10** Judge Posner ultimately concluded that the required threshold had been met, noting that the document filed with the Department of Veterans Affairs included the following statement:

> On November 15, 1989, Tom [Murrey] entered the Veterans Hospital in North Chicago to undergo a radical prostatectomy. He was extremely fearful of this surgery. However, V.A. physicians assured him and his family that surgery was the only available therapy, and that it would extend his life by 15 years.

<u>Murrey</u>, 73 F.3d at 1452 (brackets in original).

16

dural hurdles before potential litigants, but to facilitate early disposition of claims . . . . We keep section 2675(a)'s underlying purpose in mind when considering the amount of information it requires from a potential litigant. We have held that a claimant must give an administrative agency only enough information to allow the agency to "begin its own investigation" of the alleged events and explore the possibility of settlement . . . . We do not require the claimant to provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery . . . or every factual detail that might be relevant . . . . In short, the amount of information required is "minimal."

Burchfield v. United States, 168 F.3d 1252, 1255 (11th Cir. 1999) (citations omitted). Mindful, however, that our decision today not be construed to effectively vitiate the notice prong of the FTCA's presentment requirement, we issue the same caveat as did the Eleventh Circuit:

> Our holding does not mean that agency investigations must go beyond the scope of the matters alleged in administrative claims. Section 2675(a) does not require an agency to undertake an independent search for injuries or theories of liability that are not closely related to the matters described in the claim . . . . Nor does our interpretation of the statute mean that an agency will be on notice of all the facts contained in voluminous records presented by a claimant, if the claimant has not pointed to specific sources of injury . . . . Finally, a claim may be so vague or lacking in detail that the agency cannot be expected to initiate any investigation at all.

Id. at 1256-57 (citations omitted).

The Government in this case was neither compelled by the plaintiffs' administrative claim to peruse "voluminous records," nor forced to engage in a scavenger hunt for bases of liability far afield from that easily gleaned from the factual predicate. The Government was, however, required to familiarize itself with the available records and conduct a reasonable investigation -- one of adequate depth to ascertain

17

the likely sources of its liability, if any. That it failed to do so in this case does not deprive the plaintiffs of a federal remedy.

IV.

For the foregoing reasons, the judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED

WILLIAMS, Circuit Judge, dissenting:

"Depo-Provera injection given to claimant <u>in early pregnancy</u>." The last three words of this statement clearly set forth the nature of the claimed injury -- medical negligence arising from the injection of Depo-Provera during early pregnancy. This statement is notable because of what it says, as well as what it does not say. Nowhere does it forecast a claim of informed consent arising from actions occurring well before conception. Indeed, the words "in early pregnancy" form the logical time frame for a reasonable investigation of the Drews' administrative claim, particularly once the investigation revealed the impossibility of the facts alleged in that claim.

Today, however, the majority fashions a rule under which an administrative claim constitutes sufficient notice under the FTCA even though it is only slightly related to -- and, indeed, offers a wholly different factual predicate than -- the actual claim asserted before the district court. The majority's rule is overly broad and inappropriate, both on the facts of this case and in its far-reaching implications. This rule also places an unreasonable burden of investigation upon the Government and encourages fishing expeditions for claimants to recover from the federal fisc. For these reasons, as well as those discussed below, I respectfully dissent.

I.

The starting point of the analysis is the claim itself, which, as noted above, contains three very important words: "in early pregnancy." The

18

majority, as part of its analysis, hypothesizes that were it not for these three words, which it characterizes as "a minor factual inaccuracy," ante at 14, the administrative claim certainly would constitute sufficient notice to the Government of a potential informed consent claim. We need not deal with hypotheticals in this case, however, because the Drews' administrative claim speaks for itself.

Although an administrative claim need not enumerate each legal theory, it must, at least, provide sufficient information to enable the agency to conduct its own investigation. See Ahmed v. United States, 30 F.3d 514, 516-17 (4th Cir. 1994). Thus, "a claimant must . . . provide a sufficient factual predicate so that his claim can be investigated." Richland-Lexington Airport Dist. v. Atlas Properties, Inc., 854 F. Supp. 400, 412 (D.S.C. 1994) (Traxler, J.). In the present case, the Drews' administrative claim specifically alleged that Mrs. Drew was given Depo-Provera while she was pregnant. Consistent with their administrative claim, the Drews' initial complaint in district court alleged that "Depo-Provera injections were administered to the Plaintiff, Martha Drew . . . when [she] was in fact pregnant." (J.A. at 7 (emphasis added).) Indeed, all of the allegations in the Drews' initial complaint relate specifically to the Government's alleged negligence in injecting Mrs. Drew with Depo-Provera during her pregnancy. In amending their complaint to focus upon conduct that occurred well before pregnancy, the Drews did not simply assert a different legal theory based upon facts already alleged in the administrative complaint. Instead, they created, essentially from thin air, a factual predicate entirely different than that originally asserted and investigated. The most crucial fact in the Drews' administrative complaint -- that Air Force medical personnel took the affirmative act of injecting Drew with Depo-Provera while she was already pregnant -- was entirely incorrect. Likewise, the most crucial fact in the Drews' informed consent claim -- that medical personnel negligently omitted to inform or misinformed her of the risks relating to future pregnancy while under Depo-Provera -- is not suggested, raised or alluded to in the administrative claim at all. As the Seventh Circuit noted in Deloria v. Veterans Admin., 927 F.2d 1009 (7th Cir. 1991), "a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." Id. at 1012 (internal quotation marks omitted).

19

II.

Adopting the broad rule of Frantz v. United States, 29 F.3d 222 (5th Cir. 1994), the majority appears to conclude that by asserting a claim of medical negligence, the Drews necessarily placed the Government on notice of an informed consent claim because informed consent is a subset of medical negligence under South Carolina law.[1] I cannot agree with the majority's reliance upon Frantz, which itself relies upon a questionable premise. It is true that under South Carolina law, similar to Texas law, a claim of informed consent is recognized as a subset of medical negligence theory. See Hook v. Rothstein, 316 S.E.2d 690, 696-97 (S.C. Ct. App. 1984). It does not follow, however, that every claim of medical negligence automatically includes or gives notice of an informed consent claim. Cf. Baxley v. Rosenblum, 400 S.E.2d 502, 508 (S.C. Ct. App. 1991) (affirming trial court's refusal to allow Baxley to amend his pleadings to include an informed consent claim at the close of evidence at trial where Baxley only offered evidence and expert testimony relating to Dr. Rosenblum's alleged failure properly to diagnose and treat Baxley's cancer).

Instead, I am convinced that Murrey v. United States, 73 F.3d 1448 (7th Cir. 1996), provides the better rule. In Murrey, Judge Posner addressed whether an administrative claim asserting medical negli-

_____

[1] In Frantz v. United States , 29 F.3d 222 (5th Cir. 1994), the Fifth Circuit addressed whether the Frantzes had sufficiently put the Government on notice of an informed consent claim that arose from negligent eye surgery. The Frantzes' administrative claim had asserted "negligence in surgery causing blindness" and "negligence in nasal surgery on husband causing him to be blind." Id. at 224. The court concluded that the Frantzes' claim provided sufficient facts because it "provided the date, location, and description of Mr. Frantz's injury," and listed as potential witnesses "[a]ll medical personnel who cared for" Mr. Frantz. Id. The court further reasoned that the Government's investigation of the negligence claim should have revealed the possibility of an informed consent claim because under Texas law, "a suit for the failure of a doctor to fully inform a patient of the risks of surgery sounds in negligence." Id. The court concluded, therefore, that "[b]y its very nature, the informed consent claim is included in the Frantzes' allegation of negligence in their administrative claim." Id.

gence during surgery gave sufficient notice of an informed consent claim. Even though the Murrey court recognized that informed consent is a species of negligence, it nevertheless observed that "to base a suit on lack of informed consent Murrey's estate was required to include, or at least to allude to, the issue of informed consent in the administrative claim." Id. at 1451. And, although the Murrey court concluded that the administrative claim provided sufficient facts to notify the Government of the informed consent claim, **2** it explicitly rejected Frantz, stating that "the administrative claim must narrate facts from which a legally trained reader would infer a failure to obtain informed consent." Id. at 1453; see also Bush v. United States, 703 F.2d 491, 495 (11th Cir. 1983) (concluding that the district court lacked jurisdiction to consider informed consent claim because "[n]either the claim nor the attached medical evaluation contained any challenge to the consent form . . . . There was no allegation that the doctors failed to disclose the risks involved in the medical procedures. Thus, the V.A. was not properly apprised of its potential liability on this ground, and had no opportunity to investigate the claim." (footnote omitted)).**3**

_____

**2** In Murrey v. United States , 73 F.3d 1448 (7th Cir. 1996), unlike the present case, the administrative complaint gave clear notice of the informed consent claim. The administrative complaint in Murrey included an attachment that stated that Murrey was fearful of the surgery and that the doctors "assured him and his family that surgery was the only available therapy, and that it would extend his life by 15 years." Id. at 1452.

**3** The majority cites the Eleventh Circuit's more recent decision in Burchfield v. United States, 168 F.3d 1252 (11th Cir. 1999), in which the court stated that "[w]e do not require the claimant to provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery, or every factual detail that might be relevant. In short, the amount of information required is `minimal.'" Id. at 1255 (internal citations omitted). Notably, the Burchfield court cited Bush v. United States, 703 F.2d 491 (11th Cir. 1983), among other cases, for the proposition that "[s]ection 2675(a) does not require an agency to undertake an independent search for injuries or theories of liability that are not closely related to the matters described in the claim." Id. at 1256 (emphasis added).

21

Here, unlike Murrey, there is absolutely no indication in the administrative complaint that Drew was asserting an informed consent claim.**4** Indeed, the facts as alleged in the administrative complaint are inconsistent with such a claim because the duty of informed consent, as now alleged, would have arisen months before Mrs. Drew's pregnancy. There is no doubt that faced with these facts, the Murrey court would reach the opposite conclusion.**5**

_____

**4 Richland-Lexington Airport Dist. v. Atlas Properties, Inc.**, 854 F. Supp. 400 (D.S.C. 1994), an opinion written by then-district Judge Traxler, also sets forth standards that are inconsistent with the majority's decision. In Atlas Properties, Judge Traxler stated that § 2675(a)'s notice requirement "is more than a question of technical niceties." Id. at 409 (internal quotation marks omitted). He also clarified that

> notice must do more than cause "the government to sift through the record." Rather, notice must be sufficiently detailed so that the United States can "evaluate its exposure as far as liability is concerned." Therefore, in addition to requiring a sum certain, a claimant must also provide a sufficient factual predicate so that his claim can be investigated.

Id. at 412 (quoting Keene Corp. v. United States, 700 F.2d 836, 842 (2d Cir. 1983)) (internal citations omitted). Although the majority cites the standards set forth in Atlas Properties, it apparently finds no guidance in them because it fails to apply these standards to the present case. Had the majority applied these standards, its rationale would fail. The majority's decision effectively imposes upon the Government a duty to "sift through the record" in the face of an evolving factual predicate in order to anticipate facts that a plaintiff might have alleged, but did not. The majority's approach places too much of a burden upon the Government and gives too great a reward to a chameleon-like claimant.

**5** The majority characterizes the factual discrepancy between the administrative complaint and the Drews' informed consent claim as "a minor factual inaccuracy." Ante at 14. This characterization might be true if the proper standard of measurement for the level of inaccuracy is the number of words rather than the meaning of those words. To the contrary, "a minor factual inaccuracy" might be alleging that a car is blue when in fact it is teal. The inaccuracy in this case, however, goes to the very factual basis upon which the Drews' newly asserted legal theory rests. Surely, there is more than a "minor" difference between an allegation that a doctor injected a contraceptive during pregnancy -- an affirmative act that, on its face, may be inappropriate and that itself suggests

22

The rule of <u>Murrey</u>, and its emphasis on the legally trained reader, is particularly apt to the present facts. I find it particularly notable that the Drews' counsel, an experienced litigator in medical negligence law, was apparently unaware of the possibility that the Drews might have an informed consent claim based upon the facts as alleged in their administrative complaint. Only after discovery did Mrs. Drew completely change her version of the facts from those contained in the administrative complaint, prompting counsel to move in district court to amend the Drews' complaint to include the informed consent claim. Yet, the majority would inexplicably place the burden upon the Government to anticipate facts and theories that the Drews' own counsel could not.

Moreover, although the majority notes that "[t]he Government had complete access to Mrs. Drew's medical file at Shaw Air Force Base," <u>ante</u> at 12, these records contain an important fact that would have further deterred the Government from anticipating an informed consent claim from the administrative complaint-- Mrs. Drew took additional doses of Depo-Provera after her child was born with a defect.[6] If the idea behind informed consent is that the injured party would not have taken the drug had she known about its risks, how can we expect the Government to forecast an informed consent claim in light of records that clearly show that Mrs. Drew continued to take the drug even after becoming aware of those risks?

III.

The majority also relies upon a letter from Major Eric S. Israel to the Drews' counsel denying the Drews' administrative claim. At the outset, I question the propriety of relying upon a letter that was never raised before the district court. (<u>See</u> Letter from the Drews' counsel

_____

the basis of liability -- and an injection of a contraceptive months before pregnancy, when use of a contraceptive is generally appropriate, and where the basis of liability is not the use of the drug itself, but rather an omission that accompanies its injection.

**6** Sterling Drew was born on December 30, 1995. On February 15, 1996, Mrs. Drew signed an informed consent form to receive additional injections of Depo-Provera.

23

to this Court of 2/1/00 supplying copy of the denial letter and stating that "[u]pon review of this matter and conferring with opposing counsel, it appears that [this letter] was not presented at the lower Court level, either on its own or as an Exhibit to any document that was filed which appears on the docket sheet"). I am unaware of any other instances where we have considered evidence on appeal that was not presented below. See, e.g., United States v. Hastings, 126 F.3d 310, 316 (4th Cir. 1997) (stating that the court of appeals should not consider evidence that was not presented to the district court). But, even ignoring the irregularity of considering this evidence, the denial letter does little to support the Drews' position. The letter does not disclose that the Government had any idea that informed consent would be an issue in this case. To the contrary, the denial letter is more reasonably read as showing that the Government, quite sensibly, examined the records and concluded that the facts as alleged by the Drews in their administrative complaint could not be reconciled with reality, and, therefore, that the Drews' claim as alleged was meritless. (See Letter from Israel to the Drews of 12/23/97, at 1 ("It does not appear possible that Mrs. Drew could have received an injection of Depo-Provera while she was pregnant with Sterling.").) It is simply untenable to require the Government, in the face of wholly meritless assertions of fact, to envision unasserted facts under which a claimant could recover if the administrative claim were written differently.

IV.

In conclusion, although the majority asserts that its decision should not be read to "effectively vitiate the notice prong of the FTCA's presentment requirement," ante at 17, this is exactly the effect of the rule that the majority adopts. The majority's approach to this case places an undue burden upon the Government to anticipate facts that a chameleon-like claimant might assert once the original set of facts becomes unsuitable. Because the facts underlying the Drews' informed consent claim are only slightly implicated by the facts as alleged in their administrative complaint, because even experienced medical malpractice counsel could not forecast an informed consent claim from the facts contained in the administrative complaint, because the better rule articulated in Murrey mandates the opposite result, and because the majority's decision, in effect, creates an exception to the notice requirement that wholly eviscerates the rule,

24

I cannot agree with the majority's decision. For these reasons, I respectfully dissent.