**F I L E D**

PUBLISH

**October 4, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KIMBERLY STAGGS, individually
and as mother and next friend of
Baylee Staggs, a minor,

    Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA, ex
rel. The Department of Health and
Human Services; UNITED STATES
OF AMERICA, ex rel. Public Health
Services; UNITED STATES OF
AMERICA, ex rel. Indian Health
Services; UNITED STATES OF
AMERICA, ex rel. W.W. Hastings
Indian Hospital,

    Defendants-Appellees.

No. 04-7138

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CV-03-340-WH)**

---

Submitted on the briefs:

Bill D. Reynolds, Nolan, Caddell & Reynolds PA, Fort Smith, Arkansas, for
Plaintiff-Appellant.

Sheldon J. Sperling, United States Attorney, and Susan Stidham Brandon,
Assistant United States Attorney, Muskogee, Oklahoma, for Defendants-
Appellees.

Before **EBEL**, **HARTZ**, and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

Appellant Kimberly Staggs challenges the district court's ruling in her medical negligence case that it lacked subject matter jurisdiction to consider lack of informed consent. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[*]

## I. BACKGROUND

Staggs filed with the Department of Health and Human Services (DHHS) a Standard Form 95 "Claim for Damage, Injury, or Death," describing the basis for her claim:

> This is an action for medical malpractice against W.W. Hastings Indian Hospital in Tahlequah, Oklahoma by virtue of the negligent management of Kimberly D. Staggs' pregnancy, labor management and negligent treatment of her infant daughter, Baylee R. Staggs upon delivery on March 20, 1999. . . .
>
> Kimberly Staggs was admitted to W.W. Hastings for evaluation of preeclampsia. At this point in time and after the amniocentesis, Ms. Kimberly Staggs should have been slated for a C-section. However[,] the staff violated the standard of care by trying to ripen the cervix and induce labor. Under no circumstances

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

should this have been done given her condition. In any event, the decision to ripen the cervix and induce labor was made. Multiple and obvious warning signs were present which included the late deceleration on the fetal heart monitor tapes, her blood pressure, and Meconium staining. The staff and physicians failed to take any of these warning signs into consideration and order a C-section which would have prevented the brain injury that Baylee Staggs has suffered. All of these warning signs were blatant and obvious and included early warning signs of moderate deceleration with very light contractions. In spite of these multiple warning signs the staff continued to be negligent in their management of Ms. Kimberly Staggs' labor.

The management was so grossly deviant that an emergency C-section had to be done; was not even done within the standard of care; and proceeded without general anesthesia or a spinal block. . . . Subsequently, Baylee Staggs was born in a severely depressed hypoxic state and upon delivery the staff further depressed Baylee Staggs by continuing to do harm to her. As a result, Baylee Staggs is permanently brain damaged which was caused by the negligence of the staff of W.W. Hastings Indian Hospital. There is a substantial departure from the standard of care in the monitoring of Kimberly Staggs['] labor and delivery and a severe violation of the standard of care in the attending of Baylee Staggs upon delivery.

Aplt. App. at 35.

After DHHS denied Staggs' administrative claim, Staggs sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80. Staggs alleged at least ten deviations from the standard of care, but never mentioned lack of informed consent.[1] Prior to trial, the district court granted the

---

[1] Staggs listed as examples of negligent conduct: providing incompetent and unqualified medical personnel; inducing labor; continuing to induce labor using Pitocin and Cytotec in the absence of labor progression; failing to recognize or

(continued...)

-3-

government's motion to exclude any evidence of lack of informed consent, reasoning that the theory "was not raised in the administrative claim or the very detailed complaint." Aplt. App. at 87-88.

Despite the district court's exclusionary ruling, however, Staggs did provide some lack-of-informed-consent testimony after the government opened the door to that issue on cross-examination.[2] Following the bench trial, the district court entered findings, conclusions, and judgment against Staggs. In a footnote, the court stated that it lacked subject matter jurisdiction to consider the informed consent issue because it was not raised administratively or in the complaint. Staggs appealed.

## II. ANALYSIS

Under the FTCA, federal jurisdiction over damages suits against the United States depends upon a claimant presenting to the appropriate federal agency "(1) a written statement sufficiently describing the injury to enable the agency to begin

---

[1](...continued)
treat Baylee's "nonreassuring fetal heart patterns"; allowing a nurse mid-wife to continue managing Staggs' labor; delaying calling a physician; using induction agents "without sufficient orders and protocols"; using Cytotec "in absence of FDA approval"; improperly intubating Baylee; and performing a cesarean section under local anesthetic. Aplt. App. at 20-22.

[2]    We decline the government's invitation to explore the merits of Staggs' lack of informed consent claim as an alternative basis for affirmance. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101-02 (1998) (rejecting the doctrine of hypothetical jurisdiction).

its own investigation, and (2) a sum certain damages claim." *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992) (quotation marks omitted). We are concerned here with only the first jurisdictional requirement, which presents a question of law subject to de novo review, *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005).

In *Trentadue*, we followed the First Circuit's test, which asks whether the claim's language "'serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct.'" 397 F.3d at 852 (quoting *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000)). In accordance with the test's pragmatic purpose, we added that a claim should give notice of the underlying facts and circumstances "rather than the exact grounds upon which [the claimant] seeks to hold the government liable." *Id.* at 853.

Staggs argues that her administrative claim was sufficient to implicate lack of informed consent. Specifically, she refers to language in her claim that accused the hospital of a "substantial departure from the standard of care" and the "negligent management of [her] pregnancy [and] labor." Aplt. App. at 35. Staggs asserts that failure to obtain informed consent was inherent in this language and other language indicating that during her care, a decision had to be made about changing the course of treatment. We disagree. As stated by the Oklahoma Supreme Court, the informed consent doctrine "imposes a duty on a physician or

-5-

surgeon to inform a patient of his options and their attendant risks. If a physician breaches this duty, [the] patient's consent is defective, and [the] physician is responsible for the consequences." *Scott v. Bradford*, 606 P.2d 554, 557 (Okla. 1979).[3] Nothing in Staggs' administrative claim suggests that Staggs consented to a course of treatment or remained on such a course without being informed of her options and the risks.[4] There are no allegations, for instance, that Staggs was unaware or misinformed as to the direction, scope or potential consequences of her and Baylee's treatment. And given the length and factual specificity of Staggs' description of her claim without a mention of "consent" or a suitable synonym, DHHS could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was unnecessary.[5] We also deem it noteworthy that Staggs' complaint is

---

[3]    Under the FTCA, we apply the law of the state in which the allegedly tortious act or omission occurred. 28 U.S.C. § 1346(b)(1).

[4]    Nor is there any indication that Staggs withheld consent from a particular treatment or that she retracted such consent, so as to raise a battery theory, *see Scott*, 606 P.2d at 557 (distinguishing between lack of informed consent as a negligence theory and lack of any consent as an intentional tort theory). In any event, the FTCA's waiver of sovereign immunity would not have covered medical battery. *See* 28 U.S.C. § 2680(h).

[5]    We are not persuaded that a contrary conclusion is mandated by the fact that Staggs and Baylee's medical records were attached to the claim form. Staggs does not intimate how a review of those medical records, either singularly or in conjunction with the description of Staggs' claim, would have disclosed the possibility of lack of informed consent. We will not "manufacture a party's

(continued...)

silent regarding lack of informed consent. *See* Fed. R. Civ. P. 8(a)(2) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

In reaching our conclusion that Staggs' administrative claim lacks facts and circumstances sufficient to raise the possibility of lack of informed consent, we decline to adopt the Fifth Circuit's view that an administrative claim for medical negligence necessarily includes lack of informed consent when the underlying state law treats lack of informed consent as negligence, *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994). Every other circuit that has examined the issue employs a case-by-case approach,[6] which we find consistent with the FTCA's

---

[5](...continued)
argument on appeal when it has failed in its burden to draw our attention to the error below." *Scott v. Hern*, 216 F.3d 897, 910 n.7 (10th Cir. 2000) (quotation marks omitted).

[6]     *See, e.g.*, *Goodman v. United States*, 298 F.3d 1048, 1055-56 (9th Cir. 2002) (stating that "the *Frantz* rule is too broad and may give inadequate respect to the values of fair notice"); *Murrey v. United States*, 73 F.3d 1448, 1453 (7th Cir. 1996) (rejecting *Frantz* in favor of reviewing the claim for "facts from which a legally trained reader would infer a failure to obtain informed consent"); *Bush v. United States*, 703 F.2d 491, 495 (11th Cir. 1983) (holding that the district court had no jurisdiction to consider lack of informed consent because there was no allegation that the doctors failed to disclose risks and because there was no challenge to the patient's signed consent form). Although the Fourth Circuit in *Drew v. United States*, 217 F.3d 193, 199-200 (4th Cir. 2000), agreed with the Fifth Circuit's *Frantz* decision, the Fourth Circuit later vacated its opinion upon granting en banc consideration, and summarily affirmed the district court's dismissal for lack of jurisdiction, *Drew ex rel. Drew v. United States*, 231 F.3d 927, 927-28 (2000).

waiver of sovereign immunity and underlying purpose to "ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States," *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 271 n.3 (10th Cir. 1991) (quotation marks omitted).

We recognize the tragic circumstances of this case and that our decision provides little solace to the Staggs family. However, the FTCA's presentation requirements are jurisdictional and cannot be waived. *Trentadue*, 397 F.3d at 852.

The judgment of the district court is affirmed.